FARISS v. ANACONDA COPPER MINING CO. et al.

No. 1447.

District Court, D. Montana, Butte Division.

Jan. 25, 1940.

Lowndes Maury and A. G. Shone, both of Butte, Mont., for plaintiff.

John E. Corette, J. E. Corette, Jr., and Robert D. Corette, all of Butte, Mont., for defendant John E. Corette, administrator.

W. H. Hoover, John V. Dwyer, J. T. Finlen, Jr., and Robert D. Corette, all of Butte, Mont., for defendant Anaconda Copper Mining Co.

H. C. Hopkins, of Butte, Mont., for defendants Foster Inv. Co. and Hazel B. Foster Holmes and Philip Wiseman.

H. C. Hopkins, of Butte, Mont., associate counsel for John MacGinniss, Jr.

T. J. Davis, of Butte, Mont., for defendants John MacGinnis, Jr. and Eloise MacGinniss, etc.

PRAY, District Judge.

This is a suit in equity to quiet title, and involves the validity of a tax deed and other claims to mining property described in the complaint and known as the Golden Rule Lode Claim, situated in Silver Bow County, State of Montana.

Certain facts were stipulated by counsel for the respective parties which considerably shortened the hearing. The plaintiff obtained his tax deed, on May 16, 1908, to the above-named mining claim. The record shows that an undivided one thirty-second interest in said claim was conveyed to plaintiff on December 31st, 1908, by Patrick Mullins and his wife and Andrew V. Corry. The plaintiff removed to North Carolina from Montana in 1909 and later became a citizen of that state. According to the record he appears to have returned to Montana in 1917 and was on the claim in question, also in 1937 when he remained in Montana a week or two. It was stipulated that the appropriate records of Silver Bow County, Montana, from 1904 to 1937, inclusive, show the facts and figures concerning the assessment and payment of taxes on the said mining claim, "and, it is further agreed and stipulated that as shown by said Exhibit 'B', for the respective years therein set forth the respective persons to whom said Golden Rule Lode Claim was assessed were, for such respective years shown, co-owners of undivided interests in said lode claim with defendants Anaconda Copper Mining Company, a cor-

poration, John E. Corette as administrator with the will annexed of the estate of Pat Mullins, deceased, Hazel B. Foster Holmes and Philip Wiseman as surviving trustees of Foster Investment Company, an expired and dissolved corporation, and John MacGinniss, Jr., and Eloise MacGinniss as Executrix of the last will and testament of John MacGinniss, deceased, or their predecessors in interest in said lode claim; except that it is agreed said Henry J. Fariss was not such co-owner with any of said defendants or their predecessors in interest until December 31, 1908."

Taxes were paid on the entire acreage and for the full assessed value as follows:

1904. By J. H. Fariss for delinquent taxes.
1905. By Clark Montana Realty Co., A. V. Corry, L. W. Foster and S. A. Estes.
1906. By W. A. Clark & Brother.
1907. By Clark Montana Realty Co.
1908. By J. H. Fariss.
1909. By J. H. Fariss, et al.
1910. By W. A. Clark & Brother.
1911. By W. A. Clark & Brother.
1912. By J. H. Fariss.
1913 to 1923. By J. H. Fariss and by W. A. Clark & Brother.
1924 to 1928. By W. A. Clark & Brother, and a duplicate payment was made by Anaconda Copper Mining Co.
1926 to 1937. By J. H. Fariss.
1929 to 1937. By Anaconda Copper Mining Company.

The defendants and their predecessors in interest paid taxes on the property in question for all of above years except 1904, 1908, 1909 and 1912 when they were paid by J. H. Fariss.

■ The admitted facts and evidence submitted apparently do not justify the claim of laches or abandonment, Sec. 9018, R.C.M., or that of adverse possession by the plaintiff.

It appears that the defendants and their predecessors in interest were as much if not to a greater extent in possession of the property than was the plaintiff. If the plaintiff should be considered a co-owner

since December 31st, 1908, and paid taxes as such—and there is nothing to show that his payments were qualified or were paid otherwise than as co-owner—then no default has occurred in tax payments by defendants since 1904. The record shows that the plaintiff failed to pay the taxes for the years 1905, 1906, 1907, 1910, 1911, 1924 and 1925. The Anaconda Copper Mining Company claimed possession for many years through the periodical inspections of the claim by their agents, which possession would be shared by its co-owners.

It is stipulated and agreed that if the tax deed is held to be invalid, then the fee simple title to said claim when the suit was begun is as follows:

| | |
|---|---|
| J. H. Fariss | 6/192nds |
| Hazel B. Foster Holmes and Philip Wiseman, as surviving trustees of Foster Investment Company, a dissolved corporation, an undivided | 39/192nds |
| John MacGinniss, Jr., | 18/192nds |
| Anaconda Copper Mining Company | 96/192nds |
| John E. Corette, as administrator of the estate of Pat Mullins, deceased, | 33/192nds |

And if the tax deed is held to be valid, then the title when suit was begun is as follows:

| | |
|---|---|
| Anaconda Copper Mining Company, | 39/192nds |
| John E. Corette, as administrator of the estate of Pat Mullins, deceased, | 33/192nds |
| J. H. Fariss, plaintiff, | 120/192nds. |

Certificate of tax sale was issued to plaintiff January 9th, 1905, and his application for tax deed was made the 16th day of May, 1908, and the deed bears that date and was acknowledged on that date. At the time when such certificate of tax sale was issued, Section 3895, Montana Codes of 1895, (Pol.Code), was in force and read as follows: "Sec. 3895. The purchaser of property sold for delinquent taxes, or his assignee, must, thirty days previous to the expiration of the time for the redemption, or thirty days before he applies for a deed, serve upon the owner of the property purchased, or upon the person occupying the property, if said property is oc-

cupied, a written notice, stating that said property, or a portion thereof, has been sold for delinquent taxes; giving the date of sale, the amount of property sold, the amount for which it was sold, the amount then due, and the time when the right of redemption will expire, or when the purchaser will apply for a deed, and the owner of the property, has the right of redemption indefinitely until such notice has been given and said deed applied for, upon the payment of the fees, percentages, penalties and costs required by law. In case of an unoccupied property, a similar notice must be posted in a conspicuous place upon the property, at least thirty days before the expiration of the time for redemption, or thirty days before the purchaser applies for a deed."

Effective March 3rd, 1905, Laws 1905, c. 79, the above section was amended to read as follows: "Section 3895. The purchaser of property sold for delinquent taxes or his assignee, must, thirty days previous to the expiration of the time for redemption, or thirty days before he applies for a deed, serve upon the owner of the property purchased, if, known, and upon the person occupying the property, if said property is occupied, a written notice, stating that said property, or a portion thereof, has been sold for delinquent taxes, giving the date of sale, the amount of property sold, the amount for which it was sold, the amount due, and the time when the right [of] redemption will expire, or when the purchaser will apply for a deed, and the owner of the property has the right of redemption indefinitely until such notice has been given and said deed applied for, upon the payment of fees, percentages, penalties and costs required by law. In case of an unoccupied property, or a mining claim, such notice must be posted in a conspicuous place upon the property, and personally served upon all owners thereof residing in the county where the property is situated, at least thirty days before the expiration of the time for redemption, or thirty days before the purchaser applies for such tax deed. * * * [In force from passage and approval]. Approved March 3, 1905."

Was the section as amended applicable when plaintiff applied for his tax deed? The general rule seems to be that the law in force at the time of the tax sale and issuance of the tax certificate governs. The law at that time was Section 3895, of Montana Codes of 1895, and contained this mandatory provision: "The purchaser of property sold for delinquent taxes, or his assignee, must, thirty days previous to the expiration of the time for the redemption, or thirty days before he applies for a deed, serve upon the owner of the property purchased, or upon the person occupying the property, if said property is occupied, a written notice, stating that said property, or a portion thereof, has been sold for delinquent taxes; giving the date of sale * * *."

Then at the end of this section occurs the following: "In case of an unoccupied property, a similar notice must be posted in a conspicuous place upon the property, at least thirty days before the expiration of the time for redemption, or thirty days before the purchaser applies for a deed." This latter provision should not be held to dispense with notice to the owner as above provided but should be construed simply as an additional requirement, that if the property is unoccupied a similar notice must be posted in a conspicuous place on the land. Either the owner must be served or the person occupying the land, if the land is occupied. If the land is unoccupied then the owner must be served and a similar notice posted on the land, and in speaking of the owner, the singular would, of course, include the plural if there was more than one owner. Any other construction would have given the owners in this case practically no notice at all. The two sections under consideration are substantially the same. Before the amendment the purchaser was required to serve the owner and the responsibility was upon him to find out who the owner or owners were, and this was not difficult of performance since he could go to the records himself or have an abstractor prepare a pencil chain, if he did not wish to incur the expense of ordering a complete abstract of title.

The section as amended provided for personal service upon all owners residing in the county where the property was situated, and here the purchaser was likewise required to find out who the owners were and their places of residence and serve those residing in the county. In both instances he was required to post a notice in a conspicuous place on the premises. In either event, whether acting under the original or amended section, the plaintiff failed to give the notice required by

law, and, in the opinion of the court, such failure constituted a jurisdictional defect in the procedure required to obtain a valid tax title. As the court views it, the purchaser failed to comply with either statute. However, there appears to be a somewhat different version in Cullen v. Western, etc., Title Co., 47 Mont. 513, at pages 527, 528, 134 P. 302, at page 306, in a quotation referring to Sections 3895 and 3896 of the Political Code of Montana of 1895, from a California case based upon a similar statute, to the effect that "If the affidavit shows that the notice was served upon any person other than the one to whom the property was assessed, it must also show that the person so served was one upon whom the purchaser was authorized to serve the notice. If the service is not made upon the owner, it must be posted upon the property if it is unoccupied; or, if it is occupied, it must be served upon the person occupying it. It is incumbent, then, upon the purchaser to show by his affidavit whether the property was occupied or unoccupied, and, if occupied, that the person upon whom the notice was served was at the time occupying it."

■ This interpretation as to service of notice required in Sec. 3895 seems to have been inspired by Simmons v. McCarthy, 118 Cal. 622, 50 P. 761, and Hall v. Capps, 107 Cal. 513, 40 P. 809. Under the ruling in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, this construction of Sec. 3895 might have to be accepted as the law of this case, if the State Supreme Court really intended to hold that if the land was unoccupied no service of notice on the owner need be made, and there might be some doubt as to whether such an interpretation was intended as no definite statement is made to that effect, although such an inference might be drawn; but surely it is not warranted from a plain reading of the mandatory provisions of the statute which says that the notice must be served upon the owner or the occupant, if the land is occupied, and if unoccupied *a similar* notice must be posted in a conspicuous place upon the land. However, both the original and amended statute require a posting of notice for 30 days and counsel for defendants have clearly indicated that such posting occurred during 29 days instead of 30 days, so that the requirement in both statutes that the purchaser shall post a notice in a conspicuous place on the land 30 days before the time for redemption expires or 30 days before he applies for his deed was not complied with. State ex rel. St. George v. Justice Court, 80 Mont. 53, 257 P. 1034. Furthermore, the affidavit of posting does not show that the notice was in fact posted in a conspicuous place upon the land; and the deed itself recites that the grantee filed the necessary affidavit required by Section 3895, Chapter VIII, Part III, Title X, Political Code of Montana; in other words, the deed fails to show compliance with Sec. 3896 in the filing of the required affidavit, and likewise fails to show compliance with Sec. 3895, as amended. Coulter v. Stafford, 9 Cir., 56 F. 564.

■ But as a proposition of law, which statute was the purchaser required to follow in his application for a tax deed, that of 1895 or as amended in 1905, and before he applied for his deed.

Defendants contend that the rule that the rights of parties in a case of this kind are to be determined by the law in force at the time of the tax sale and the issuance of the certificate, does not prevent the legislature from making changes in the manner of enforcing the lien, providing there is no substantial impairment of any of the obligations of the contract between the purchaser and the state. To sustain their views in this respect they cite Willoughby on the Constitution, vol. 3, page 1621, Cooley's Const. Limitations, vol. 1, pages 587, 588, and as a leading case on the subject, Curtis v. Whitney, 13 Wall. 68, 70, 71, 20 L.Ed. 513, in which the court said: "In the case before us the right of plaintiff to receive her deed is not taken away, nor the time when she would be entitled to it postponed. While she had a right to receive either her money or her deed at the end of three years, the owner of the land had a right to pay the money and thus prevent a conveyance. These were the coincident rights of the parties growing out of the contract by which the land was sold for taxes. The legislature, by way of giving efficacy to the right of redemption, passed a law which was just, easy to be complied with, and necessary to secure in many cases the exercise of this right. Can this be said to impair the obligation of plaintiff's contract, because it required her to give such notice as would enable the other party to exercise his rights under the contract? How does such a requirement lessen the binding efficacy of plaintiff's contract? The right to the mon-

ey or the land remains, and can be enforced whenever the party gives the requisite legal notice. The authority of the legislature to frame rules by which the right of redemption may be rendered effectual cannot be questioned, and among the most appropriate and least burdensome of these is the notice required by statute."

A well-reasoned case is found in Gage v. Stewart, 127 Ill. 207, 19 N.E. 702, 704, 11 Am.St.Rep. 116, wherein subsequent to the tax sale the law was amended to provide for notice to parties who could by diligent inquiry be found in that county, otherwise by publication, also that an affidavit of notice should be filed with the officer executing the deed. The amendment was not complied with in respect to notice. The court there held that the amended act was to take effect in praesenti as to all notices served or to be served thereafter, and would apply to all purchasers at tax sales and their assignees, irrespective of when the sale for taxes was made. To quote pertinent language of that decision: "The amended act applied to all steps to be taken after it went into effect, and which could be performed according to its requirements. Nor does this construction give the act a retrospective operation, as seems to be supposed. The rule undoubtedly is that a retrospective effect will not be given to the statute, unless the legislative intent that it shall so operate is clearly manifested. But no such effect is sought to be given this statute. The legislature, for the better protection of those having the right of redemption, required that notice be served upon the owner, if to be found in the county, at least three months before the expiration of redemption. No other change affecting the right of the purchaser or holder of the certificate of purchase is wrought by this amendment. It in no way affects or applies to the sale, or any of the precedent steps in the proceeding, lawful under the former statute, but relates exclusively to acts to be performed by the purchaser or his assignee subsequent to its taking effect, and by the performance of which his inchoate right in the land under his certificate of purchase might ripen into a title. These requirements—of giving notice of the sale, when redemption will expire, and making proof thereof to the clerk—are in the nature of remedies to be pursued by the purchaser or holder of the certificate of purchase to mature and perfect his title to the land under the tax sale. As to all these acts which could be performed by the purchaser or his assignee after the statute became in force, it would necessarily operate prospectively." In 26 R.C.L., § 390, page 434, this statement appears, followed by citations: "The rule that the rights of parties in tax proceedings are to be determined by the law in force at the time of the tax sale and the issuance of the certificate, does not prevent the legislature from making changes in the manner of enforcing the lien, which do not substantially impair any of the obligations of the contract."

In State ex rel. City of Billings v. Osten, 91 Mont. 76, 5 P.2d 562, it appears beyond dispute that in the sale of real property for delinquent taxes a contract between the purchaser and the state is created the obligations of which can not be impaired to the disadvantage of the purchaser by subsequent legislation; the right of property acquired by the purchaser at the sale, and the right of redemption remaining to the owner, must be governed by the law in force at the time of the sale; neither could be abridged or enlarged by subsequent legislation. This case involved a change of the substantive law. To require a compliance with the amended statute in respect to notice does not impair or affect the right of property acquired by the purchaser at the sale or the right of redemption remaining to the owner.

In Harrington v. McLean, 70 Mont. 51, 57, 223 P. 912, 914, the court said: "In 2 Cooley on Taxation, p. 1034, speaking of the conditions imposed upon a purchaser who makes application for a deed in tax proceedings, it is said: 'Whatever the statute may make provision for, subsequent to the sale, * * * must be strictly performed. * * * Every provision of this nature must be strictly complied with. Nothing can be substituted for it.'" Here the question was as to the sufficiency of the affidavit filed with the county treasurer which recited that the property in question was occupied, but wholly failed to state by whom or that the notice was served upon such occupant. The court held that this was the very basis of the officer's authority to issue the tax deed. It would seem that the purchaser would have to show full compliance with the statute as amended in 1905 when he applied for his tax deed. It appears that plaintiff gave notice by posting of his application for a tax deed on April 16th, 1908, and stated

therein that he would apply to the treasurer for a deed to the property on May 16th, 1908, and that the fractional interest aforesaid in the property was not deeded to him by the Mullins and Corry until December 31st, 1908. His tax deed bears date May 16th, 1908, so that as it seems to the court, the usual rules of law incident to co-ownership of land would not apply in this case until December 31st, 1908. Defendants and their predecessors went on paying taxes on this claim for many years, apparently in utter ignorance of the fact that plaintiff had obtained a tax deed years before and would one day claim the land under his tax title and attempt to dispossess all of his co-owners, the defendants herein, in a suit to quiet title. The only notice given of application for the deed was by a written notice "posted on the said property" as appears from the affidavit of one A. F. Munroe, without stating where upon the land it was posted or how it was posted, or whether it was posted in a conspicuous place as the statute directed; it might have been posted anywhere and completely hidden from view so far as can be ascertained from the affidavit or deed. At any rate, the law then in force required personal service of notice upon all owners who were residents of the county, and this was never given, and it could easily have been given, and an opportunity thus afforded the defendants to pay whatever sums were due; they had paid the taxes before and for many years, and tendered the amount due for redemption into court at the time of the trial. The claim bears the name of the "Golden Rule", but that fact does not seem to have made a very deep impression upon plaintiff in dealing with his co-owners.

However, having held that plaintiff should have complied with section 3895 as amended in respect to giving notice, the enquiry now must extend to the Validating Act of 1933, enacted by the legislature as Chapter 79. The principal case relied upon by plaintiff construing this act is Martin v. Glacier County et al., 102 Mont. 213, 56 P.2d 742, 743, and counsel for plaintiff intimated that perhaps he should have come into court with only that one case to sustain the validity of the tax deed. The pertinent language of the above-mentioned act reads as follows: "Any tax deed heretofore issued in this state shall not be held invalid by reason of any defect in the form, substance or amounts stated to be due in the notice of application for tax deed and all tax deeds heretofore issued are legalized and declared to be valid and legal regardless of any error, defect, omission, irregularity or failure to correctly state the amount due in the notice of application for * * * deed." In the above case an agent of the plaintiff visited one D. B. Inghram, the record owner of the land there in question at his home in Idaho on January 4th, 1935; Inghram disclaimed any interest in the land but the agent persuaded him to execute a quitclaim deed to plaintiff on the representation that plaintiff had purchased the tax title and wanted a quitclaim deed to clear the title and avoid litigation. The Idaho owner had purchased the land in 1923, had not paid the taxes and the land was "struck off" to the county at the treasurer's sale that year for delinquent taxes, and a certificate of sale issued to it. Taxes for subsequent years were unpaid. On August 2, 1929, the county, after more than 30 days' notice, applied for and received a tax deed to the land.

After plaintiff had acquired the quitclaim deed she brought suit to quiet title against the owners of the tax title; she was not the owner of the tax title as her agent had represented to Inghram. In her suit plaintiff alleged that the tax deed was void upon its face for the reasons that (1) the property was struck off to the county on the first day of the sale; (2) it was sold to the county for an amount in excess of the taxes due; (3) the notice of application for deed did not state the correct amount to be paid on redemption; and (4) the posting of the notice did not meet the requirements of the law. Following the statement set forth in the opinion, the court said: "Conceding that the defects pointed out would, under our decisions construing the provisions of the Code which outline the procedure for securing a tax deed, render the instant deed void (Glacier County v. Schlinski, 90 Mont. 136, 300 P. 270, 272; Shubat v. Glacier County, 93 Mont. 160, 18 P.(2d) 614; Glacier County v. Halvorson Mercantile Co., 93 Mont. 520, 19 P.(2d) 648; Small v. Hull, 96 Mont. 525, 32 P.(2d) 4), does not dispose of the question here presented. There remains the question as to whether or not the Legislature could, and did, cure the defects mentioned and render the deed valid, regardless of such defects. * * * Here the certificate of sale was still in

578

effect when the act of 1929 became effective, and the instant tax deed was issued and in effect prior to the enactment of the validating act of 1933 (chapter 79, Laws of 1933); the defects relied upon to invalidate the tax deed were therefore cured, if the validating acts are valid and the irregularities in the certificate of sale and the deed are such as can be cured by the Legislature." And thereafter in the same case the court cited what it said in Lamont v. Vinger, 61 Mont. 530—545, 202 P. 769, 773, in quoting from Cooley's Constitutional Limitations: "A retrospective statute curing defects * * * where they are in their nature irregularities only, and do not extend to matters of jurisdiction, is not void on constitutional grounds * * * But the healing statute must in all cases be confined to validating acts which the Legislature might previously have authorized. * * * If the thing wanting or which failed to be done, * * * is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law."

But the court further held in the Martin case: "Deeds void on their face for jurisdictional defects 'are not deeds but nullities,' and, as to these, curative acts are unavailing; they may be attacked at any time." Cullen v. Western Mortgage & Warranty Title Co., 47 Mont. 513, 134 P. 302; Horsky v. McKennan, 53 Mont. 50, 162 P. 376; Lindeman v. Pinson, 54 Mont. 466, 171 P. 271. And the court went on further to state: "No attack is made upon the proceedings here involved on these jurisdictional grounds; the only jurisdictional question here presented is with regard to the notice of application for the tax deed. Failure to give any notice of such application divests the treasurer of authority to issue the deed, as such procedure violates the 'due process' provision of the Constitution (article 3, § 27). Small v. Hull, supra. While the trial court made a finding to the effect that no notice of application for tax deed 'in the form prescribed by law' was given to Inghram, the

owner of the real property, either personally or by registered mail, nor was he given 'any written notice' of the amount necessary to redeem or the time when the redemption could be made, and further that the county failed to 'post in a conspicuous place on the property' such a notice, or to file proof of service of such notice by posting or publication, as required by law, *the fact is* that the notice of application for tax deed, subject to the infirmities of which complaint is made, was published in a newspaper and a copy thereof sent by registered mail to Inghram, received and receipted for, as above mentioned, and a copy thereof was posted 'on a fence post' on the premises. It is apparent that Inghram, the owner of the premises at the time the deed was issued, had notice that the county would, on August 2, 1929, apply for the deed; that he made no attempt to, and did not care to, redeem, and thereafter considered that he had no interest in the property. The case does not, therefore, present the problem of protecting the 'true owner' from loss of his property for the nonpayment of taxes constituting but a fraction of its value, but as to which of two speculators should prevail. * * * The rights of the owner of the property, the delinquent taxpayer, would be as fully protected had the statute authorized what was done in this instance as they would have been had the officials strictly complied with the law." But the facts in the Fariss case differ greatly from those in the Martin case and the language of the latter case, above quoted, would not apply at all to the situation here presented. The defendants, or some of them, or their predecessors, had been paying the taxes on this claim almost continuously for 34 years and since 1905, and long before the taking of the tax deed by plaintiff, and apparently without any knowledge of it, because no notice had been given by plaintiff to the defendants and co-owners, or their predecessors in interest, of his application for tax deed as the statute required. And can it now be said that the owners would have been as fully protected had the statute authorized what was done in this instance as they would have been had Fariss fully complied with the law, or could it be said that the instant case does not present the problem of protecting the "true owner" from loss of his property for non-payment of taxes constituting but a fraction of its value.

As it seems to the court there is a jurisdictional defect appearing upon the face of this deed which renders it a nullity and open to attack at any time, and one which the healing statute invoked does not cure. Again referring to the language quoted in the Martin case from Cooley's Constitutional Limitations in regard to a retrospective statute curing defects: "where they are in their nature irregularities only, and do not extend to matters of jurisdiction." Unless the notice here required is given, the time for redemption is extended indefinitely. "The statute, so far as it attempts to bar the owner's right to attack a deed issued without the notice of application therefor, amounts to a taking of his property without due process of law." Small v. Hull, 96 Mont. 525, 32 P.2d 4, 7. A prerequisite to the reception in evidence of a tax deed is that it must be accompanied by the affidavit and notice of application therefor. Cullen v. Western Mortgage & Warranty Title Co., supra. It has been held that a deed is not even prima facie evidence that the statutory notice was given. Johnson v. Canty, 162 Cal. 391, 123 P. 263; Cullen v. Western Mortgage & Warranty Title Co., supra.

Some discussion has occurred relative to the rights of co-tenants. It may be set down as a well-established rule of law that " 'one of the incidents of tenancy in common is that each of the co-tenants is entitled to the exclusive possession of the entire property as against the whole world, except his co-tenants.' Hopkins v. Noyes, 4 Mont. 550, 2 P. 280, 283. 'All acts done by a cotenant and relating to or affecting the common property, are presumed to have been done by him for the common benefit of himself and the others. The relation between him and the other owners is always supposed to be amicable rather than hostile; and his acts are therefore regarded as being in subordination to the title of all the tenants, for by so regarding them they may be made to promote the interests of all.' * * * However, one tenant in common may oust his cotenant and make his possession adverse. But, as prima facie the possession of every cotenant is presumed to be by virtue of his title, and not in hostility to the rights of his cotenants, whoever asserts the remedy, to the granting of which the fact of ouster is a prerequisite, must first remove this prima facie presumption. * * * In order to sustain the claim that he has obtained title by adverse possession, the claimant must show that his cotenants had sufficient notice of his exclusive and hostile claim. 'It may be stated as the rule, that in all cases the co-tenant must have knowledge of the ouster or disseizer before an adverse possession can be alleged against him. The knowledge must be either brought home to him, or the occupier must make his possession so visibly hostile, notorious and adverse, as to justify an inference of knowledge on the part of the tenant sought to be ousted or disseized, and of laches on his part, should he, under such circumstances, fail to assert his rights.' * * *" Le Vasseur v. Roullman, 93 Mont. 552, 556, 557, 558, 20 P.2d 250, 252. And in 7 R.C.L. pp. 853, 854, the following appears: "Likewise, where one who is holding adversely acquires the interest of a co-tenant, his adverse possession ceases, and he becomes possessed as a tenant in common, entitled to all the rights incident to such a holding, and subject to the liabilities."

The co-owners here have established a legal title to the property and they are therefore presumed to have been in possession thereof within the time required by law, and aside from this presumption the testimony of one of the defendant's agents shows that it had been in possession of the property for many years by personal inspection on the claim, which occurred a great many times during that period. Two witnesses testified to inspections of the claim and that it was a part of their duties and in accordance with their instructions by the defendant, so that the claim asserted by another would be deemed to be in subordination to the legal title, unless it further appeared that the property had been held and possessed adversely to such legal title for ten years before the commencement of the action, Sec. 9018, R.C.M.1935.

It seems quite evident that where a tax deed is declared to be void on its face because of failure to comply with jurisdictional requirements the defense of the statute of limitations as a bar would not be available; (Horsky v. McKennan, 53 Mont. 50, 64, 65, 162 P. 376, and cases cited therein) and upon good authority such statute would not be available whether the jurisdictional defect appears upon the face of the deed or not, (Small v. Hull, 96 Mont. 525, 526, 32 P.2d 4), providing the defect which renders the deed void is

found to exist in the affidavit required to be filed by the purchaser, showing upon its face that the notice was not served upon the owners. -

This court is of the opinion that the defendants ought to prevail in this suit, and findings of fact and conclusions of law will be signed accordingly. (Italicizing supplied.)