COUNTY OF MUSSELSHELL ET AL., RESPONDENTS, *v.* MORRIS DEVELOPMENT CO. ET AL., APPELLANTS.

(No. 6,926.)

(Submitted March 18, 1932. Decided May 25, 1932.)

[11 Pac. (2d) 774.]

*Mr. L. A. Foot,* Attorney General, *Mr. L. V. Ketter,* Assistant Attorney General, for Appellant State Board of Equalization, and *Mr. W. W. Mercer,* for Appellant Morris Development Company, submitted a brief; *Mr. Ketter* argued the cause orally.

*Mr. Charles F. Huppe,* County Attorney of Musselshell County, for Respondents, submitted a brief; *Mr. Lester H. Loble,* of Counsel, argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendants from a judgment annulling an order of the state board of equalization relating to an assessment against defendant Morris Development Company. The essential facts out of which the controversy arose are these:

In 1910 the United States issued to James E. Woodard a patent to a coal mining claim containing 160 acres, situated in Musselshell county. In February, 1915, Woodard quitclaimed to E. G. Megeath. In March, 1915, Megeath quitclaimed to the Roundup Coal Mining Company. In March, 1929, the Roundup Coal Mining Company quitclaimed the surface of 118 acres of the land to the defendant Morris Development Company with the following reservations: "(1) The grantor herein reserves to itself all coal and other minerals underlying the surface of said real estate, together with the right to use such part of the surface as the grantor thinks necessary for the purpose of mining operations carried on for the purpose of extracting said coal and minerals, or for the purpose of extracting coal and minerals from adjacent lands. (2) The grantor reserves both for itself and for the Montana Power Company such a right of way across said lands for the purpose of erecting and maintaining such electric power or light pole and wire lines and for the purpose of erecting and maintaining telephone pole and wire lines as the grantor, its successors or assigns may at any time think necessary for the carrying on of their coal mining operations now or hereafter to be conducted upon said real estate, or upon any other real estate now owned by the grantor in said county. (3) The grantor reserves for itself such a right of way across said lands for road purposes as grantor, its successors or assigns may at any time think necessary for the carrying on of their coal mining operations now or hereafter to be conducted upon said real estate, or upon any other real estate now owned by the grantor in said county. (4) A gravel pit is located on the eastern part of the above described land or upon land adjacent thereto. The gran-

tor reserves the right to take such gravel as it may desire from said gravel pit for the purpose of using the said gravel in its coal mining operations carried on in said county.''

The county assessor of Musselshell county assessed to the Morris Development Company the 118 acres for the year 1930 by assessing 72 acres as grazing land at a valuation of $87, 46 acres as tillable land at a valuation of $522, and the whole 118 acres at $25 per acre (the price paid to the United States therefor), less 50 cents per acre or $59 assessed to the Roundup Coal Mining Company, leaving the portion of the valuation of $25 per acre assessed to the Morris Development Company at $2,891. The total assessed valuation of the 118 acres assessed against the Morris Development Company was therefore $3,500. The Morris Development Company appealed from the assessment to the county board of equalization, and that board confirmed the assessment. It then appealed to the state board of equalization, asserting in its notice that the mineral contents of the land had been removed and that the land contains no mineral of any commercial value, and that the land does not constitute a mine or mining claim assessable and taxable as such, under the Constitution and laws of the state; that it is not tillable or agricultural in character and is properly classified as grazing land for assessment purposes.

Hearing was had before the state board of equalization, after which the board found that the only property right of the Morris Development Company in the lands in question is the right to the surface for purposes other than mining, which right has a separate and independent value; that the Morris Development Company is not the owner of a mine or mining claim containing coal or other valuable mineral deposits; that all of the coal has been removed from underneath the land and the mine abandoned. The board found that the Morris Development Company should not be assessed for any portion of the original price of $25 per acre paid to the United States for the mine or mining claim, but should only be assessed for the value of the surface for purposes other than mining. It affirmed the assessment of 72 acres at $87, 46 acres at $522, and ordered that the

total assessed value for the year 1930 of the 118 acres against the Morris Development Company be the sum of $609.

Plaintiffs, county of Musselshell and Norman Moody, as county clerk and as a taxpayer, thereupon filed a petition for a writ of review in the district court of Musselshell county, asserting that the order of the state board was in excess of its jurisdiction. The writ was issued. Pursuant to the mandate of the writ, the state board made return to the court of the proceeding had before it. The court, after hearing, rendered judgment annulling the order of the state board in so far as it reduced the valuation of the 118 acres from $3,500 to $609, as being in excess of the jurisdiction of the board. Defendants appealed from the judgment.

The appeal brings up the question of the proper assessment of the land, in view of section 3, Article XII, of the Constitution, which provides: "All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes, in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law; and all machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims which have a value separate and independent of such mines or mining claims, and the annual net proceeds of all mines and mining claims shall be taxed as provided by law."

This section of the Constitution has been before this court for interpretation upon many occasions.

In the case of *Murray* v. *Hinds*, 30 Mont. 466, 76 Pac. 1039, it was held that, when the surface of a mining claim is used for other than mining purposes and has a separate and inde-

pendent value for such other purposes, it is taxable on this added value in addition to the tax on the mining claim. This is clearly what the Constitution requires. .

This constitutional provision was again discussed in *Northern Pacific Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386, 389. In that case the railway company conveyed certain lands to purchasers, reserving to itself all minerals, together with the use of the surface necessary for carrying on the mining operations. The land there involved had not been purchased from the government as a mining claim, but was included in the congressional grant of July 2, 1864. The court held that the reservation held by the railway company was an interest in real estate, but not a mine within the meaning of section 3, Article XII, of the Constitution. In the course of the opinion the court, in speaking of this section, said: ''It fixes an arbitrary valuation upon the surface of patented mining claims, as such, and provides the method by which the value of a mine shall be determined, viz., by the net value of its proceeds.''

The *Mjelde Case* was in part overruled by the case of *Northern Pacific Ry. Co.* v. *County of Musselshell,* 54 Mont. 96, 169 Pac. 53, dealing with a like reservation on lands acquired in the same manner as those in the *Mjelde Case.* The court held, on rehearing, that the reservation consisted of a corporeal and an incorporeal hereditament; that the former was not taxable, but the latter was taxable as an interest in real estate. By the use of certain language in the opinion it leaves the implication that the tax on the mine or mining claim under section 3, Article XII, is a tax on the surface only of such mine or mining claim.

In *Hinz* v. *Musselshell County,* 82 Mont. 502, 267 Pac. 1113, 1116, the case of *Northern Pacific Ry. Co.* v. *County of Musselshell* was partially overruled. In the opinion in the *Hinz Case* it was observed: ''There is much talk in the decisions of the 'surface.' The Constitution speaks of the use of the surface: when the surface is used for purposes other than mining and has a separate and independent value for such purposes. But the grantee of the United States, when he receives letters pat-

ent for his mining claim, owns the soil from the surface to the center of the earth within the vertical lines of his boundaries, save for such reservations as may be made in the patent, or be provided by law." By the use of this language prior decisions which leave the inference that the tax on the mine or mining claim, purchased from the government as such, is a tax on the surface only, were overruled, and properly so. The tax provided by section 3, Article XII, is on the mine or mining claim as a whole, which embraces everything to the center of the earth.

In the *Hinz Case* this court announced the following conclusion respecting the purpose of this section of the Constitution: "The design, then, was, first, to tax the mining claim reckoned upon its acreage; in addition, to tax the surface if it came to pass that the surface, when used for purposes other than mining, had a separate and independent value for such purposes; in addition, to tax the machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims which have a value separate and independent of such mines and mining claims; and, finally, to tax the annual net proceeds 'of all mines and mining claims.' Certainly it cannot be contended that the separate and independent value which the surface, not used for mining purposes, but being used for other purposes and having a value for such other purposes, shall constitute the assessable value of the mining claim rather than the value fixed by the Constitution. A process of that nature would fritter away by construction the plain language and purpose of section 3, Article XII."

It is asserted by defendants that by the use of the phrase "reckoned upon its acreage" as used in the foregoing excerpt, as well as by the language appearing in prior decisions, the court added to the wording of the Constitution something that is not therein written. It is true that these words are not in the constitutional section under consideration. The constitutional mandate is that "all mines and mining claims * * * shall be taxed at the price paid the United States therefor." The price paid to the United States for the claim here involved was

based upon a stated sum per acre, and to tax it in the same manner is a direct compliance with the Constitution. This method of taxation does not signify that the tax on the mining claim, as such, is on the surface only. The mine or mining claim that should be taxed at the price paid the government consists not only of the surface rights for mining purposes, but embraces the subsurface contents as well. Such a tax does not operate as a tax upon the minerals in place as such. The subsurface contents, inclusive of the minerals in place, constitute a part of the mine or mining claim as much so as the surface rights used for mining purposes. The two together constitute the property that must be taxed at the price paid the government.

The land here involved was purchased from the United States as a part of a mine or mining claim. The taxable value of the mine or claim is fixed by the Constitution at the price paid the United States therefor, and ''that value is fixed and immutable,'' and the command of the Constitution is clear and imperative. (*Hinz* v. *Musselshell County, supra; State ex rel. Hinz* v. *Moody,* 71 Mont. 473, 230 Pac. 575.)

The assessor properly taxed the 118 acres of the mine or mining claim at $25 per acre (the price paid to the United States therefor). He, and as to this the state board agreed, properly assessed 72 acres as grazing land at the value of $87, and 46 acres as tillable land at $522, the surface to that extent being used for such purposes and having a separate and independent value therefor. But it is contended by counsel for defendants that the mine or mining claim, as such, under the reservation, is owned by the Roundup Coal Mining Company and not by the defendant Morris Development Company, and that therefore the state board properly reduced the assessment against the Morris Development Company by eliminating the tax of $25 per acre (the price paid the government).

The state board in reducing the assessment, as its order indicates, was actuated at least in part by the conclusion that the property ceased to be a mine or mining claim by

reason of the removal of all the coal and other minerals therefrom. That was the only question raised by the Morris Development Company in its notice of appeal to the state board. The board had no authority to change the classification of the land from that of mineral land to any other classification. So long as a mine or mining claim purchased from the government as such remains in private ownership, it is taxable at the price paid the government under the direct command of section 3, Article XII, of the Constitution, and the state board of equalization is without authority to defeat the constitutional mandate by finding that the land is not in fact mineral land.

Counsel for defendants do not attempt to justify the action of the state board on the ground that the land is no longer mineral in character. Their contention, as above noted, is that the land is still taxable as a portion of the mine or mining claim at the price paid the government, but that it is taxable as such to the Roundup Coal Mining Company and not to the defendant Morris Development Company. But the finding of the state board, to the effect that the land is no longer a mine or mining claim, if permitted to stand, operates to exempt this portion of the original mine or mining claim from taxation as such. This the law does not permit. The deed from the Roundup Coal Mining Company to the Morris Development Company, followed by the use of the surface for other than mining purposes, operated to create separate taxable interests in the property. (*Barnard Realty Co.* v. *City of Butte,* 50 Mont. 159, 145 Pac. 946; *Cobban* v. *Meagher,* 42 Mont. 399, 113 Pac. 290.)

The mine or mining claim, as such, was reserved to the Roundup Coal Mining Company. It, and not the Morris Development Company, was the owner thereof. The Roundup Coal Mining Company in the year 1930 was the owner of the entire estate or interest that must be taxed at the price paid the United States therefor. Defendant Morris Development Company is the owner of only the added taxable interest that

must be separately assessed at its value as provided by law. The state board should have taken the steps provided for by law to cause the assessment of the 118 acres of the mine or mining claim to be made at the price paid the government against the Roundup Coal Mining Company, for separate estates or interests should be separately assessed to the respective owners. (37 Cyc. 790.)

Under our statutes "no mistake in the name of the owner or supposed owner of real property renders the assessment thereof invalid" (sec. 2002, Rev. Codes 1921), and "no assessment or act relating to assessment or collection of taxes is illegal on account of informality" (sec. 2036, Id.), and "when land is sold for taxes correctly imposed as the property of a particular person, no misnomer of the owner, or supposed owner, or other mistake relating to the ownership thereof affects the sale or renders it void or voidable" (sec. 2225, Id.). Under these statutes it has been held that, if taxes have been correctly imposed upon real property, a mistake relating to the ownership thereof does not affect the legality of the tax. (*Cobban* v. *Hinds,* 23 Mont. 338, 59 Pac. 1; *Cullen* v. *Western Mortgage & Warranty Title Co.,* 47 Mont. 513, 134 Pac. 302.) Whether, in view of these statutory provisions, the assessment made by the assessor of $25 per acre for the 118 acres as a part of the mine or mining claim against the Morris Development Company would be valid for all purposes against the Roundup Coal Mining Company, the true owner thereof, need not now be determined.

Full justice can be done by modifying the judgment appealed from so that the assessment at the price paid the government will run against the true owner of the mine or mining claim, and this we think should be done notwithstanding the proceedings before the district court but challenged the jurisdiction of the state board to make the order in question.

Of necessity, prior decisions of this court which leave the impression that a reservation, such as we have before us here, in lands purchased from the government as a mine or mining claim, must be taxed as an interest in real estate to be valued

otherwise than at the price paid the government, are to that extent modified.

The state board properly based the assessment against the Morris Development Company on the surface value for other than mining purposes. To obviate any question regarding the validity of the assessment of the 118 acres as a part of the mining claim as not having been made against the owner thereof, the district court should direct that the state board take the steps prescribed by the Constitution and laws to change the assessment of the 118 acres as against the Roundup Coal Mining Company, by requiring them to be assessed at $25 per acre in lieu of fifty cents per acre. It is so ordered.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.