FILED

11/21/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0769

DA 16-0769

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 284

ZINVEST, LLC, a Montana limited liability company,

  Plaintiff and Appellee,

 v.

GUNNERSFIELD ENTERPRISES, INC.,
a California corporation,

  Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
      In and For the County of Gallatin, Cause No. DV-13-670B
      Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

    Mark L. Evans, Axilon Law Group, PLLC, Bozeman, Montana

    Elizabeth L. Griffing, Axilon Law Group, PLLC, Helena, Montana

  For Appellee:

    W. Scott Green, Daniel Larry Snedigar, Patten, Peterman, Bekkedahl &
    Green, PLLC, Billings, Montana

           Submitted on Briefs: August 23, 2017
                Decided: November 21, 2017

Filed:

              _____
                   Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      In 2008, Gunnersfield Enterprises, Inc. purchased five condominium units and an adjoining vacant lot. The deed was properly recorded and a Realty Transfer Certificate was submitted to the Department of Revenue, which did not correctly update its ownership records for the vacant lot. Gunnersfield received notice of and paid the tax assessments for the five condominium units each year, but the Gallatin County Treasurer continued to send the tax bills for the vacant lot to the previous owner. When the taxes went unpaid, the Treasurer sold the lot for delinquent taxes. Zinvest, LLC acquired the County's interest. Gunnersfield now appeals the District Court's determination to quiet title to Zinvest. We reverse and remand, concluding that the Department of Revenue's defective property tax assessment voided the tax lien sale.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2      In June 2008, Gunnersfield purchased five commercial condominium units, known as Units 1 through 5, and an adjacent fenced lot, known as Lot 6A, from Prospero, LLC in a single transaction. A single Warranty Deed conveying all of the property to Gunnersfield was recorded that same month in the records of the Gallatin County Clerk and Recorder. The Department of Revenue (Department) received both a copy of the deed and the Realty Transfer Certificate in 2008. While the Department correctly updated its ownership records for Units 1 through 5, it did not update the ownership record for Lot 6A.

¶3      Gunnersfield paid all property tax notices it received from the Gallatin County Treasurer (County) for the property. The notices it received, however, were for the five

2

condominium units only. From 2009 through 2012, the County continued to send tax bills for Lot 6A to Prospero, the former owner. Beginning in the second half of 2009 and continuing in the subsequent years, the taxes for Lot 6A went unpaid. In July 2010, the County offered a property tax lien for sale against Lot 6A for the 2009 delinquent taxes. At that time there was no purchaser and the County was listed as the purchaser of the lien.

¶4     In 2012, Zinvest, LLC became interested in the property and took action to acquire the tax lien from the County. Zinvest sent the statutorily required notice of pending assignment of the tax lien to Prospero, which the U.S. Postal Service returned undelivered. Zinvest did not send notice to Gunnersfield. Upon Zinvest's payment of the delinquent taxes, interest, and fees, the County assigned its tax lien interest in the property to Zinvest on October 9, 2012.

¶5     Zinvest then began the process to acquire a tax deed on the property. During this process, Zinvest obtained a Litigation Guarantee from Stewart Title, which revealed that the title to Lot 6A had vested in Gunnersfield in 2008. Zinvest sent a notice that a tax deed may issue to Prospero, to Gunnersfield, and to the County. Gunnersfield admits that it received this notice. In an affidavit from Jon Chaney, the President and majority shareholder of Gunnersfield, Gunnersfield attested that it inquired with the County about what property was at issue in the notice. The County office staff informed Gunnersfield that the notice pertained to the property located at 153 Shepherd Trail, the street address for the condominium building. Lot 6A has no street address. Gunnersfield maintains that

3

it assumed the notice must relate to condominium Units 6 and 7, which it believed Prospero still owned, because Gunnersfield had never been notified, and was unaware, of any delinquent taxes on its own properties. In September 2013, when the period for redemption expired, the County issued a tax deed to Zinvest.

¶6 Zinvest filed a quiet title action for the property in the District Court in October 2013. During this litigation, Zinvest's attorney sent a letter to Gunnersfield requesting that it sign a Disclaimer of Interest. Gunnersfield signed and returned the Disclaimer of Interest, again believing that the proceedings related to Units 6 and 7, and not to Lot 6A. The District Court granted final judgment and quieted title to Zinvest in May 2014.

¶7 Realizing its error in February 2015, Gunnersfield filed a motion for relief from judgment with the District Court. The court granted the motion and struck Gunnersfield's prior Disclaimer of Interest from the record, reasoning that it was "not unreasonable" for Gunnersfield to assume that the proceedings did not pertain to its property and that "negligence in this instance [was] excusable." Following additional briefing and argument, the District Court denied Gunnersfield's motions for summary judgment and granted Zinvest's motion. It issued a final judgment on December 2, 2016, quieting title to Zinvest.

**STANDARDS OF REVIEW**

¶8 This Court reviews a district court's grant or denial of summary judgment de novo. *RN & DB, LLC v. Stewart*, 2015 MT 327, ¶ 13, 381 Mont. 429, 362 P.3d 61. Like the district court, we apply the criteria of M. R. Civ. P. 56(c)(3) to determine whether

4

there is a "genuine issue as to any material fact" and whether "the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3); *see also RN & DB, LLC*, ¶ 13. If there is no genuine issue of material fact, we review for correctness the district court's conclusion that the moving party is entitled to judgment as a matter of law. *RN & DB, LLC*, ¶ 13.

¶9 We review de novo a district court's interpretation and application of a statute. *Dick Irwin Inc. v. State*, 2013 MT 272, ¶ 18, 372 Mont. 58, 310 P.3d 524.

## DISCUSSION

¶10 *Whether the defective property tax assessment voided the tax lien sale.*

¶11 It is undisputed that Gunnersfield properly recorded its deed to Lot 6A and that the Department received the Realty Transfer Certificate, which showed correctly the conveyance of Lot 6A from Prospero to Gunnersfield. It is also undisputed that the Department continued to assess Lot 6A to Prospero, rather than to Gunnersfield; that Gunnersfield did not receive any notices of taxes due on Lot 6A; and that Gunnersfield paid all taxes due on the notices it did receive for Units 1 through 5. Gunnersfield argues that, under these facts, the Department's tax assessments on Lot 6A were invalid.

¶12 Among its arguments before the District Court, Gunnersfield contended that errors in the tax assessment of the property invalidated the assessment and therefore rendered void the tax deed to Zinvest. The District Court disagreed and held that, even though the wrong party was assessed, the tax assessment was valid under § 15-8-201(4), MCA. The District Court reasoned further that the language in the misnomer statute protecting tax

5

lien sales, § 15-17-325, MCA, supported this understanding. It quoted two cases from this Court in support—*Cobban v. Hinds*, 23 Mont. 338, 349, 59 P. 1, 2 (1899), and *Meyer v. Chessman*, 132 Mont. 187, 192, 315 P.2d 512, 514 (1957).

¶13    On appeal, Zinvest argues that the District Court decided the case correctly and that the tax assessments were procedurally proper. In support, it argues that the language of §§ 15-8-201(4) and 15-17-325, MCA, as well as some of our prior case law, indicates that taxation is an in rem proceeding, not an in personam proceeding. Zinvest thus contends that a valid assessment does not require that the actual owner of the property be assessed, as long as some individual person or entity is assessed for the parcel of property at issue. Finally, Zinvest argues that it is the responsibility of taxpayers to exercise diligence and ensure their property taxes are paid.

¶14    Title 15 of the Montana Code Annotated encompasses the statutes governing taxation in the state of Montana. It prescribes a detailed process both for the assessment and taxation of property and for the sale of property for unpaid taxes. The process involves multiple steps and multiple levels of government. The Department of Revenue is tasked with valuing all of the taxable property in the state and with maintaining the database of ownership and property value information. *See* §§ 15-7-101, -304, 15-8-101, -201, MCA. Based on information from the Department, each taxing jurisdiction calculates its own mill levy and submits it to the Department. *See* §§ 15-10-201, -202, MCA. The Department computes the taxes, fees, and assessments to be levied and provides this information to each county's clerk and recorder and treasurer.

6

Section 15-10-305, MCA. The county treasurer in turn produces and mails the property tax bills, collects the property taxes, and distributes the monies to the taxing jurisdictions. Sections 15-16-101, -104, MCA. Failure to pay taxes can result in the county treasurer taking actions under Title 15, chapter 17, MCA, to sell a tax lien on the delinquent property, and, if the taxes remain unpaid, to issue a tax deed under Title 15, chapter 18, MCA, which creates a new title extinguishing the interests of the original owner. *Collier v. Kincheloe*, 2008 MT 100, ¶ 15, 342 Mont. 314, 180 P.3d 1157.

¶15 Property taxes are one of the primary and most stable means available to support local government budgets. 5-39 Richard R. Powell, *Powell on Real Property*, § 39.02[1], 39-7 (Michael Allan Wolf ed., 2017). Failure to pay taxes is a serious breach of an individual's social obligations, and tax liens are a powerful tool to ensure payment. Powell, *supra*, § 39.04, 39-37. But the tax lien statutes mandate many procedures that must be strictly followed when a county takes action to sell a tax lien or issue a tax deed "because a property owner's fundamental interests are at stake in tax deed proceedings." *Isern v. Summerfield*, 1998 MT 45, ¶ 10, 287 Mont. 461, 956 P.2d 28. In fact, "[t]he purpose behind the tax lien sales statutes is to protect property owners and their rights to due process." *Zinvest, LLC v. Hudgins*, 2014 MT 201, ¶ 20, 376 Mont. 72, 330 P.3d 1135.

¶16 The interests of the property owner also find protection in the tax assessment statutes requiring that property taxes be assessed in the owner's name. *See* 72 Am. Jur. 2d *State and Local Taxation* § 630 (2017). Among the protections that the tax

7

assessment statutes provide is to alert property owners to tax assessments levied against them and their property. Such notice gives property owners the opportunity to dispute the government's valuation of their land, *see* § 15-7-102(3), (6), MCA; *see also RN & DB, LLC*, ¶ 36, and helps to prevent any unwarranted property forfeitures through a tax lien sale. The latter purpose is evidenced in the fact that a valid assessment is a foundational requirement for a county treasurer to have jurisdiction to sell a tax lien for delinquent taxes. *See Martin v. Glacier Cnty.*, 102 Mont. 213, 219, 56 P.2d 742, 744 (1936); *see also* Powell, *supra*, § 39.04[4], 39-48 ("All steps required of the public authority for a properly levied tax assessment to arise are jurisdictional prerequisites for a valid tax sale.").

¶17 Although the entire process described above is often referred to as "taxation," there are distinct stages. "Assessment [is] the process by which persons subject to taxation [are] listed, their property described, and its value ascertained and stated. Taxation consist[s] in determining the rate of the levy and imposing it." *Vail v. Custer Cnty.*, 132 Mont. 205, 214, 315 P.2d 993, 998 (1957) (quoting *Hilger v. Moore*, 56 Mont. 146, 165, 182 P. 477, 480 (1919)) (emphasis omitted). Under current law, assessment is entirely the responsibility of the Department. Collection and enforcement are the responsibility of county treasurers. Gunnersfield argues that the errors of the Department make the tax assessment invalid.[1]

---

[1] Gunnersfield also challenges other steps in the process, but we find it unnecessary to entertain these arguments.

8

¶18     The Department must assess property taxes to "the person by whom it was owned or claimed or in whose possession or control it was at midnight of the preceding January 1." Section 15-8-201(2)(a), MCA. Even if the owner is absent or unknown, "the department shall make an estimate of the value of the property." Section 15-8-501(1), MCA. But the statute elaborates that "[i]f the name of the absent owner is known to the department, the property must be assessed in the owner's name." Section 15-8-501(2), MCA. Further, when property is sold and ownership changes, the Department is statutorily obligated upon receipt of a Realty Transfer Certificate to update ownership records used for the assessment and taxation of real property. Section 15-7-304, MCA.

¶19     The language of these provisions indicates that the Legislature intended to make these protections mandatory: "the department *shall* assess property to . . . the person by whom it was owned," "the property *must be* assessed in the owner's name," and "[t]he department is not *required* to change any ownership records . . . *unless* the department has received a transfer certificate." Sections 15-8-201(2), -501, 15-7-304(2), MCA (emphasis added). Indeed, in prior cases interpreting almost the exact same language in predecessor statutes of §§ 15-8-201(2) and -501, MCA, this Court determined that the language is mandatory in relation to both personal property and real property. *See Birney v. Warren*, 28 Mont. 64, 67-68, 72 P. 293, 294 (1903) ("[T]he provisions . . . are mandatory, and . . . require the assessor to assess personal property in the name of the real owner."); *Vail*, 132 Mont. at 214, 315 P.2d at 998 (quoting 3 Thomas M. Cooley, *A Treatise on the Law of Taxation* § 1096, 2216-17 (4th ed. 1924)) ("'An assessment

9

should ordinarily be made to the owner of record, and statutes so provide in many states . . . Such statutes are mandatory so that an assessment to one not the owner makes the assessment void.'").

¶20 Since those cases were decided our tax laws have been amended. The Department was created in 1973, removing the responsibility for tax assessments from county officers. Along with updating §§ 15-8-201(2) and -501, MCA, to apply to the Department rather than to county assessors, the Legislature added other responsibilities to the Department, including § 15-7-304(2), MCA, which requires the Department to update its ownership records upon receipt of a Realty Transfer Certificate. 1975 Mont. Laws ch. 528, § 4, as amended 1993 Mont. Laws (Nov. 1993 Sp. Sess.) ch. 27, § 44. These changes emphasize the importance the Legislature placed on the Department assessing taxes to the owner of the property.

¶21 Zinvest relies, as did the District Court, on §§ 15-17-325 and 15-8-201(4), MCA, to overcome the mandatory language of these statutes. Section 15-17-325, MCA, provides: "When a tax lien sale certificate is acquired, as provided [by the tax lien statutes] and the taxes were properly assessed on the property of a particular person, no misnomer of ownership or other mistake relating to ownership affects the sale or renders it void or voidable." In plain language, this statute makes clear that it offers no curative effects unless the "taxes were properly assessed." Section 15-17-325, MCA. The statute cannot save an otherwise invalid tax assessment. Only the curative provision in the assessment statute, § 15-8-201(4), MCA, could do so.

10

¶22 Zinvest argues that the District Court properly relied on *Cobban*, 23 Mont. at 348-49, 59 P. at 2, in applying § 15-17-325, MCA. *Cobban* upheld a tax assessment on the basis of the language in the predecessor statutes of §§ 15-8-201(4), -308, and 15-17-325, MCA. The predecessor to § 15-17-325, MCA, originally was passed in 1891. The language of the statute remained largely unchanged until 1987 when the modern tax lien statutes were enacted. 1987 Mont. Laws ch. 587, § 13. The original language in force at the time of *Cobban* stated: "When land is sold for taxes correctly imposed as the property of a particular person, no misnomer of the owner, or supposed owner, or other mistake relating to the ownership thereof affects the sale or renders it void or voidable." *See* 1891 Mont. Laws 118. The modern statute differs in two important ways. First, the Legislature removed the language "When land is sold for taxes" and replaced it with "When a tax lien sale certificate is acquired." This change means the modern statute now applies to both real and personal property sold at a tax sale. This highlights the important distinction we draw between § 15-17-325, MCA—which now applies to both real and personal property—and § 15-8-201(4), MCA—which applies to real property only. Second, the Legislature broke down the qualifier that taxes be "correctly imposed" into two separate predicates: (1) the county must have followed the statutory tax lien procedures; and (2) the Department must have "properly assessed" the taxes. The Legislature's change in language indicates that the modern statute, § 15-17-325, MCA, does not apply unless the tax assessment was proper.

11

¶23 We next turn to the other misnomer statute, § 15-8-201(4), MCA. That provision states that "[a] mistake *in the name* of the owner or supposed owner of real property does not invalidate the assessment." The provision is specific to a mistake in the name of the owner rather than to a mistake in the identity of the owner. The statute says nothing about assessing the property to the wrong person or entity entirely.

¶24 The Dissent puts much weight on the inclusion of "supposed owner" in § 15-8-201(4), MCA, in arguing that the statute excuses an assessment made to the wrong person. It cannot bear this weight. "Supposed" carries connotations of belief that something is probable or certain. The first definition of "supposed" in *Webster's Third New International Dictionary* is "believed to be or accepted as such." *See Webster's Third New International Dictionary* 2298 (Philip Babcock Gove ed., 1971). The modern statutes provide a process to inform the Department of ownership changes. Gunnersfield followed this process. The Department did not "believe" Prospero was the owner, it simply had failed to update its records. There is no basis for a "supposed owner" when the process outlined in § 15-7-304, MCA, is followed and the Department is informed of the actual owner. A "supposed owner" may exist if, for example, ownership changes and the new owner fails to record his or her interest in the property and to file a Realty Transfer Certificate with the Department. But these are not the facts of this case.

¶25 Our role in interpreting statutes "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Section 15-8-201(4), MCA, does not include a

mistake in ownership and we decline to insert it. Because the provisions requiring the owner to be named are mandatory, and § 15-8-201(4), MCA, provides no cure for a defect in the identity of the owner, a tax assessment to a person or entity other than the owner, where the owner is known to the Department through properly recorded transfer records, is not a valid assessment.

¶26 Comparing the language of §§ 15-8-201(4) and 15-17-325, MCA, further supports this conclusion. Section 15-17-325, MCA, states "*no misnomer of ownership or other mistake relating to ownership* affects the sale or renders it void or voidable." This language differs from the "mistake in the name" language of § 15-8-201(4), MCA. Unlike the phrasing in § 15-17-325, MCA, the phrasing in § 15-8-201(4), MCA, does not include language about mistakes relating to ownership. The language that appears in these modern provisions was first adopted into Montana law in the same act of legislation in 1891. *See* 1891 Mont. Laws 73, 78, 118. Because the enacting Legislature did not use identical language in the two provisions, it is proper for us to assume that a different statutory meaning was intended and that "mistake in the name" therefore does not include "misnomer of ownership or other mistake relating to ownership." *See Gregg v. Whitefish City Council*, 2004 MT 262, ¶ 38, 323 Mont. 109, 99 P.3d 151 ("Different language is to be given different construction."); *In re Kesl's Estate*, 117 Mont. 377, 386, 161 P.2d 641, 646 (1945) (citations and internal quotations omitted) ("It is a settled rule of statutory construction that, where different language is used in the same connection in different parts of a statute, it is presumed the legislature intended a different meaning and effect.").

13

¶27 The Dissent relies on *Birney v. Warren* to demonstrate that the statutes treat a mistake relating to the ownership of personal property differently from a mistake relating to the ownership of real property—that is, that such a mistake during the tax assessment voids a personal property tax sale, but not a real property tax sale. Dissent, ¶ 49. *Birney* voided a tax sale of personal property because the property was assessed to the wrong entity. *Birney*, 28 Mont. at 67, 72 P. at 294. The *Birney* Court's holding rested on two grounds: (1) the language of the predecessor statutes to §§ 15-8-201(2) and -501, MCA, which applies to both real and personal property, was "imperative" and thus mandatory; and (2) the predecessor statute to § 15-17-325, MCA, which excused mistakes relating to ownership, did not apply to personal property. *Birney*, 28 Mont. at 67-68, 72 P. at 294. Tellingly, the *Birney* court did not rely on the predecessor to § 15-8-201(4), MCA, to distinguish a mistake relating to ownership of real property, but relied only on the predecessor to § 15-17-325, MCA. Further, as discussed above, after the 1987 amendments to § 15-17-325, MCA, that statute now applies both to real property and to personal property sold at a tax sale and requires "properly assessed" taxes. Section 15-17-325, MCA, is no longer a basis for a distinction between a mistake in the ownership of real property as opposed to a mistake in the ownership of personal property. And as we discussed above, § 15-8-201(4), MCA, does not cure a failure to name the record owner at all.

¶28 Zinvest next argues that the tax assessment process and the subsequent tax lien sale are in rem proceedings that require only that an individual or entity be assessed, not

that the actual owner be assessed. Zinvest cites three cases in support: *Meyer*, 132 Mont. at 192, 315 P.2d at 514; *Sutter v. Scudder*, 110 Mont. 390, 394, 103 P.2d 303, 305 (1940); and *Cobban*, 23 Mont. at 349, 59 P. at 2.

¶29     Zinvest's argument that proceedings are in rem, rather than in personam, conflates the tax assessment with tax enforcement.  Assessment is the responsibility of the Department.  Responsibility for enforcement lies with the counties.  The error in the present case occurred in the tax assessment itself.  None of our prior cases have held that the assessment itself is in rem.  *Vail*, 132 Mont. at 213, 315 P.2d at 998 ("The tax *sale* is the proceeding *in rem*."); *Meyer*, 132 Mont. at 192, 315 P.2d at 514 ("[T]he tax sale is a proceeding *in rem* against the property itself."); *Sutter*, 110 Mont. at 394, 103 P.2d at 305 ("We hold that proceedings for the enforcement of a tax obligation when proceedings are against the property . . . are *in rem*.").

¶30     Further, Zinvest's argument that the proceedings are in rem, rather than in personam, is a distinction without a difference in this case.  Characterization of the assessment as in rem or in personam does not change the statutory requirements that property be assessed to the owner.  *See* §§ 15-8-201(2), -501, 15-7-304(2), MCA. Developments in in rem jurisprudence over the last forty years also support this position. The United States Supreme Court has rejected the traditional justifications for distinguishing between in rem and in personam proceedings.  *Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S. Ct. 2569, 2584 (1977) (requiring assertions of in rem jurisdiction to meet the same requirements as assertions of in personam jurisdiction); *Mennonite Bd. of*

15

*Missions v. Adams*, 462 U.S. 791, 796 n.3, 103 S. Ct. 2706, 2710 n.3 (1983) (holding that a mortgagee with a legally protected property interest is entitled by due process to notice of a tax sale and quoting *Shaffer*, 433 U.S. at 206, 97 S. Ct. at 2580, "An adverse judgment in rem directly affects the property owner by divesting him of his rights in the property before the court."). Our approach to interpreting the requirements of §§ 15-8-201(2), -501, and 15-7-304(2), MCA, does not hinge on whether the proceeding is in rem or in personam. Even if we were to hold that the tax assessment is an in rem proceeding, this would not change our interpretation of the statutory requirements that property must be assessed in the name of a known owner.

¶31     A closer look at the case law Zinvest cites convinces us that this conclusion is correct. First, *Meyer* and *Sutter* are distinguishable. In *Meyer*, the parties challenged the lack of notice before the county issued the tax deed. *Meyer*, 132 Mont. at 191, 315 P.2d at 514. The case did not raise or address any alleged errors during the tax assessment. In *Sutter*, tax assessment notices were sent to the record owner of the property, who had passed away. *Sutter*, 110 Mont. at 392, 103 P.2d at 304. His heirs had neither gone through probate in Montana nor taken any steps to record their interest in the property. *Sutter*, 110 Mont. at 392, 103 P.2d at 304. The heirs challenged the tax sale because they, as the current owners, had not received actual notice of the tax assessments. *Sutter*, 110 Mont. at 393, 103 P.2d at 305. We upheld the tax assessment as proper, however, because the record owner, i.e., the "supposed owner", was assessed and tax notices were sent to the last known address. *Sutter*, 110 Mont. at 395, 103 P.2d at 306. We held that

16

the heirs should have taken steps to properly record their interest and also that it was "incumbent upon a property owner to take notice of the known fact that all property is taxed annually, and unless the taxes are paid that the property will be sold at tax sale." *Sutter*, 110 Mont. at 395, 103 P.2d at 305.

¶32 *Sutter* counsels a different result under the facts of the present case. Gunnersfield properly recorded its interest and a Realty Transfer Certificate was sent to the Department to notify it to update its records. But the Department failed to assess the owner of record, Gunnersfield. Further, Gunnersfield paid the annual taxes on the portion of the property for which it was assessed and therefore did not have notice that it was not paying any annual taxes that were due.

¶33 The final case on which both Zinvest and the District Court relied is *Cobban v. Hinds*. The language in *Cobban* suggests that the correct listing of the owner is a mere formality and listing the lands to the wrong person during the tax assessment was not grounds for voiding a tax sale. *Cobban*, 23 Mont. at 349, 59 P. at 2. *Cobban* is not controlling for several reasons. First, as we discussed above, *Cobban* rested its holding on three statutes, including the predecessor to § 15-17-325, MCA. The current language of § 15-17-325, MCA, undermines *Cobban*'s holding relying on that statute. Further, the tax assessment statutes also have been amended and now include § 15-7-304, MCA, which obligates the Department to update ownership records when it is notified of real property transfers. More, the plain language of the assessment statutes imposes a requirement on the Department to assess land in the name of the owner.

17

¶34 Second, our subsequent case law also has undermined the decision. In *Musselshell County v. Morris Development Company*, 92 Mont. 201, 203, 11 P.2d 774, 775 (1932), Roundup Coal Mining Company quitclaimed only the surface rights to Morris Development Company and "reserve[d] to itself all coal and other minerals underlying the surface." *Musselshell County*, 92 Mont. at 203, 11 P.2d at 775. Thus, Roundup Coal Mining Company retained a fee simple interest in the minerals in the ground.[2] The county assessed Morris Development for the mining claim but this Court held that Roundup Coal Mining was the proper party to tax. *Musselshell Cnty.*, 92 Mont. at 209-10, 11 P.2d at 777. This Court explained that "separate estates or interests should be separately assessed to the respective owners" and declined to decide whether the assessment against Morris Development would be valid for all purposes against Roundup Coal Mining. *Musselshell Cnty.*, 92 Mont. at 210, 11 P.2d at 777. Despite citing *Cobban* and *Cullen v. Western Mortgage & Warranty Title Company*, 47 Mont. 513, 134 P. 302 (1913),[3] the *Musselshell County* Court ordered that steps be taken to change the assessment to the Roundup Coal Mining Comapny, "[t]o obviate any question regarding

---

[2] The Dissent challenges the applicability of *Musselshell County* because not all mining interests are taxed as real property. Dissent, ¶ 46. As we explained in *Rist v. Toole County*, 117 Mont. 426, 434, 159 P.2d 340, 343 (1945), "the concept of royalty is very different from that of the fee-simple title to minerals in place in the ground." This Court clarified in *Rist* that royalty interests are taxed as personal property, but fee-simple title to minerals in the ground is taxed as real property. *Rist*, 117 Mont. at 442, 159 P.2d at 347. In *Musselshell County*, Roundup Coal Mining Company retained a fee simple interest in the minerals underlying the surface and thus the tax assessment at issue in that case was for real property taxes, not for personal property taxes as the Dissent states.

[3] Upon review of our case law, we find few cases that have actually relied on *Cobban* to uphold challenged assessments. To the extent that *Cullen* relies on *Cobban* and the predecessor to § 15-17-325, MCA, its continued validity on this point also is called into question by our decision today.

18

the validity of the assessment," suggesting that even after *Cobban* the effect of mistaken identity of the owner on the validity of a tax assessment remained an open question. *Musselshell Cnty.*, 92 Mont. at 211, 11 P.2d at 778.

¶35 Further, *Cobban* directly conflicts with the later decided case of *Vail*.[4] Both cases dealt with the propriety of the assessment of several parcels of land together without any separation of the assessment between landowners who owned individual parcels. *Vail*, 132 Mont. at 208, 315 P.2d at 995; *Cobban*, 23 Mont. at 348, 59 P. at 2. But the two cases arrived at opposite conclusions. The *Cobban* Court upheld the tax sale, ruling that the single assessment of multiple properties with various owners was proper. *Cobban*, 23 Mont. at 348, 59 P. at 2. In *Vail*, however, this Court reaffirmed that taxes are levied upon persons—not upon property—and invalidated the tax lien on the property. *Vail*, 132 Mont. at 213, 315 P.2d at 998. We held that an assessment made en bloc to an entire development, rather than to the individual landowners within the development, was void. *Vail*, 132 Mont. at 213, 315 P.2d at 998. To the extent that *Cobban* conflicts with *Vail*, it implicitly was overruled. We decline to rely on any language in *Cobban* taken out of context, especially when our decision in *Vail* and amendments to the statutes already have undermined the foundation of *Cobban* and bring its continued validity into question.

---

[4] The Dissent correctly points out that *Vail* involved special assessments rather than property taxes. Dissent, ¶ 46. However, in *Vail*, this Court analyzed the special assessments in the same manner as property taxes and even relied on the predecessor to § 15-8-201, MCA, the general tax assessment statute, in its analysis. *Vail*, 132 Mont. at 214, 315 P.2d at 998. We disagree that *Vail* is distinguishable in a meaningful way.

19

¶36 Finally, Zinvest argues that voiding the tax lien sale "would effectively absolve the property owner from any level of diligence in the assessment process." Zinvest is correct that "it is incumbent upon a property owner to take notice of the known fact that all property is taxed annually, and unless the taxes are paid that the property will be sold at tax sale." *Sutter*, 110 Mont. at 395, 103 P.2d at 306. But "[m]ore importantly, a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional [due process] obligation." *Mennonite Bd. of Missions*, 462 U.S. at 799, 103 S. Ct. at 2712. There is nothing in the record to indicate that Gunnersfield had reason to know that the Department was not assessing the taxes for Lot 6A to Gunnersfield. During the time in question, the County taxed Units 1 through 5 together. It was reasonable for Gunnersfield to believe—and the record lacks any evidence that Gunnersfield believed otherwise—that its tax bill included Lot 6A, which was purchased in the same transaction and was conveyed to Gunnersfield in the same deed. In fact, when it received the notice from Zinvest that a tax deed may issue, Gunnersfield did inquire with the County. This inquiry only buttressed Gunnersfield's belief that the notice did not pertain to its properties, because it had paid all tax notices it had received and was unaware of any delinquent taxes on its properties.

¶37 We conclude that the tax assessment on Lot 6A was invalid. Because the tax assessment was void, the subsequent tax lien sale and issuance of a tax deed also must be voided. We require strict compliance with "every essential and material step required by the tax deed statute." *Moran v. Robbin*, 261 Mont. 478, 482-83, 863 P.2d 395, 398

20

(1993). In order for a county treasurer to have the jurisdiction to sell real property for delinquent taxes, "there must be (1) a valid assessment; (2) a valid levy; and (3) nonpayment of the tax so duly levied and assessed." *Martin*, 102 Mont. at 219, 56 P.2d at 744. The County lacked jurisdiction to hold the tax lien sale on the property because there was no valid assessment. The subsequent tax deed issued to Zinvest is void and its quiet title action must fail.

¶38 This does not mean that Gunnersfield is relieved from its tax obligations for Lot 6A. Under § 15-8-601, MCA, the Department may assess property for prior erroneous assessments within ten years of the calendar year in which the original assessment was or should have been made, "provided that the property is under the ownership or control of the same person who owned or controlled it at the time it . . . was erroneously assessed." The taxes for Lot 6A were erroneously assessed starting in 2009, and the ten-year limitation has not yet run.

## CONCLUSION

¶39 We reverse the District Court's December 15, 2015 and October 22, 2016 orders denying summary judgment to Gunnersfield, as well as the judgment quieting title in Zinvest. We remand for entry of judgment quieting title in Gunnersfield.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH

21

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶40 First and foremost, it is undisputed that Gunnersfield received actual notice of the tax sale proceedings when it was identified as a potentially interested party in the title report required by § 15-18-212(4), MCA. Zinvest filed and mailed a notice to Gunnersfield that a tax deed may be issued, dated June 17, 2013. Zinvest secured a tax deed, filed a quiet title action, and received a Disclaimer of Interest in Lot 6A from Gunnersfield. It was not until Zinvest listed the property for sale, eight months later, that Gunnersfield realized its mistake. This Court's decision, therefore, overturns a tax deed sale in which the taxpayer admits to receiving notice of a tax lien, but then failed to investigate; failed to act; and, ultimately, failed to timely discharge the tax lien. "The law helps the vigilant before those who sleep on their rights," § 1-3-218, MCA, and Montana's statutory taxation scheme is premised upon notice, process, and the near universal recognition that every property is liable to a tax. While "[t]he purpose behind the tax lien sales statutes is to protect property owners and their rights to due process," *Zinvest, LLC*, ¶ 20, the process is abused when the statutes are strictly complied with but an exception is nonetheless made to enforcement. Zinvest and the County Treasurer complied with all statutory requirements for Zinvest's purchase of Lot 6A by tax sale. Thus, where there has been strict adherence to the statutory scheme, as here, any

22

concerns of due process and notice to the taxpayer regarding the necessity for discharging an admittedly owing lien are unwarranted. Taxation and the sale of property for unpaid taxes could never be effectively administered if we were to assess the merits of each property owner's individual inquiries regarding whether he or she owed taxes. "All proceedings in the nature of assessing property for purposes of taxation and in levying and collecting taxes thereon are *in invitum* and must be *stricti juris*." *Perham v. Putnam*, 82 Mont. 349, 358, 267 P. 305, 309 (1928). Tax sales must be conducted in compliance with the taxation statutes or they are void. Conversely, "no presumption can be raised to supply defects in the proceedings for the sale[]" if there was strict statutory compliance. *Perham*, 82 Mont. at 358, 267 P. at 309.

¶41 I am also concerned with the Court's analysis regarding identification of the owner for purposes of assessment. The Court misconstrues § 15-8-201(4), MCA, by omitting any consideration of "supposed owner" and compounds the error by concluding that the property was not "properly assessed" for purposes of § 15-17-325, MCA, a statute generally providing that a sale is not to be voided by a misnomer of ownership. The Court's analysis is flawed through its failure to grasp a long-recognized statutory distinction, and one similarly recognized in our case law, between assessments of taxes on real property and assessments of taxes on personal property. Failure to appreciate this distinction leads to our unprecedented action of "implicitly" overruling, and in some instances expressly overruling, nearly a century of jurisprudence relying on and correctly

23

interpreting this distinction. Opinion, ¶¶ 33-35, 34 n.3. In my opinion, this Court's decision to jettison over a century of precedent is both hasty and ill-advised.

¶42 Montana has long recognized a distinction between the *assessment* of property and *taxation* of property. In *Hilger*, 56 Mont. at 165-66, 182 P. at 480, we said:

> When our Constitution was prepared and ratified, the term "assessment" and the term "taxation" each had a definite, well-understood meaning. Assessment was the process by which persons subject to taxation were listed, their property described, and its value ascertained and stated. Taxation consisted in determining the rate of the levy and imposing it. . . . This has been the history of our revenue legislation from the time Montana was organized as a territory, and the framers of our Constitution understood these words and used them accordingly.

Although the Court acknowledges this distinction by stating that "assessment is entirely the responsibility of the Department" and "[c]ollection and enforcement are the responsibility of County Treasurers," Opinion, ¶ 17, the Court ultimately fails to appreciate the significance of the distinction when it invalidates a tax sale (taxation) based upon its conclusion that the Department erred by incorrectly identifying the owner of real property (assessment). The Court first errs in concluding that the real property was not properly assessed pursuant to § 15-8-201(4), MCA. The Court next errs by assigning the purported error of the assessment to the County Treasurer's tax sale.

¶43 To begin, the Department, pursuant to § 15-8-201(2)(a), MCA, is required to assess property to "the person by whom it was owned or claimed . . . ." However, with respect to real property, "[a] mistake in the name of the owner *or supposed owner* of real property does not invalidate the assessment." Section 15-8-201(4), MCA (emphasis supplied). Section 15-8-201(4), MCA, is the first misnomer statute applicable to these

24

proceedings and addresses identification of the owner for the purpose of assessment. The Court's first mistake is that it interprets § 15-8-201(4), MCA, as being "specific [only] to a mistake in the name of the owner rather than to a mistake in the identity of the owner," and concludes that "[t]he statute says nothing about assessing the property to the wrong person or entity entirely." Opinion, ¶ 23. To the contrary, while such an interpretation perhaps is consistent with assessments for personal property, the statute specifically provides for other considerations when identifying the owner for purposes of assessing real property. The Court simply does not address the remaining language of § 15-8-201(4), MCA, "supposed owner," which is likely that subsection's most significant distinction from § 15-8-201(2)(a), MCA, and the other misnomer statute under consideration, § 15-17-325, MCA. Significantly, the distinction amounts to this: a mistake in the "supposed owner" of the real property will not invalidate the assessment on real property, while the same is not true for personal property. Clearly, "supposed" means that the property was assessed *in one other than the owner*. The "supposed" owner is "[p]resumed to be [the] true or real [owner] without conclusive evidence"; the "intended" owner; or the "firmly believed" or "expected" owner. *The American Heritage Dictionary of the English Language* 1751 (Joseph P. Pickett ed., 5th ed. 2011). *See also Webster's Third New International Dictionary*, *supra*, at 2298, defining "supposed" as "believed to be or accepted as such"; *Merriam-Webster's Collegiate Dictionary* 1184 (Frederick C. Mish ed., 10th ed. 1997), defining "supposed" as "held as an opinion," "mistakenly believed," or "considered probable or certain." A "supposed owner,"

25

therefore, based on these common usage definitions, would include a person other than the actual owner.

¶44 In *Cobban*, as the District Court recognized, an action by the treasurer to sell real estate for taxes due was not invalidated because the assessment was in the name of one other than the owner. *Cobban*, 23 Mont. at 350, 59 P. at 3. Moreover, our decision in *Cullen* was informed by *Cobban* when we rejected the argument that an assessment was void because it failed to name all the owners of the property. We determined the question "settled" by statute and "twice announced by this [C]ourt" that "when land is sold as the property of a particular person for taxes which have been correctly imposed upon the land, no misnomer or other mistake relating to ownership thereof affects the sale or renders it void, or voidable [citing *Cobban* and *Birney*], such mistake being in the nature of an irregularity or informality only." *Cullen*, 47 Mont. at 524-25, 134 P. at 305. Although we recite § 1-2-101, MCA, and our role in interpreting statutes, Opinion, ¶ 25, we fail to address the most relevant and significant distinction between § 15-8-201(2)(a) and -201(4), MCA; that is, we ignore, by failing to give it any effect, the plain language of the statute which provides that a mistake in the name of the "supposed owner" of real property will not invalidate the assessment. Here, the "supposed owner," Prospero, was a mistake and, as the mistake relates to real property, it will not serve to invalidate the

assessment. Had the assessment related to personal property, the same would not have been true.[1]

¶45 The second misnomer statute at issue here is § 15-17-325, MCA. In contrast to the real property distinction of § 15-8-201(4), MCA, § 15-17-325, MCA, applies to the sale of *all* property, both personal and real property. Section 15-17-325, MCA, provides that once taxes are "properly assessed on the property of a particular person, no misnomer of ownership or other mistake relating to ownership affects the tax lien or renders it void or voidable." Thus, if the assessment is for property other than real property, it must be assessed to the person by whom it is owned, § 15-8-201(2)(a), MCA. *See Birney*, 28 Mont. at 68, 72 P. at 294; *Vail*, 132 Mont. at 214, 315 P.2d at 998. Therefore, misnomers of ownership or other mistakes relating to ownership as set forth in § 15-17-325, MCA, do not raise concerns of due process or notice as the underlying requirement for the property to be assessed to the person by whom it is owned, § 15-8-201(2)(a), MCA, has been satisfied. Conversely, if personal property is not assessed to the owner, then the property has not been "properly assessed" and the provisions of the misnomer statute contained in § 15-17-325, MCA, are not implicated. Importantly, and of critical significance to these proceedings, § 15-8-201(4), MCA, also works in conjunction with § 15-17-325, MCA, applying the misnomer provision that a mistake in the name of a supposed of real property does not render the property

---

[1] Section 15-8-501, MCA, to which the Court refers, Opinion, ¶ 18, is not relevant to these proceedings as the owner was neither absent nor unknown. Again, the misnomer provisions of § 15-8-201(4), MCA, pertaining to "supposed owner" directs that a mistake in the name of the real property owner, as here, will not invalidate the assessment.

27

"[im]properly assessed." The Court's attempt to find authority for its conclusions by referring to the "modern statutes" is unpersuasive, Opinion, ¶¶ 22, 24. The statutes, applied together consistently, have always required personal property to be assessed in the name of the owner, but the assessment of real property in the name of the supposed owner, through operation of § 15-8-201(4), MCA, nonetheless remains valid. This Court has, for over a century, recognized these statutory distinctions.

¶46    In *Vail* the dispute was whether Vail held title in fee or clouded by a lien of special assessments for water charges. *Vail*, 132 Mont. at 207, 315 P.2d at 994. *Vail* did not concern a tax on real property; Vail had earlier acquired the property by tax deed and argued that the water district was late in collecting its special assessment fees. The Court found that the special assessment must be made to the individual owners and relied on the predecessor to § 15-8-201(2)(a), MCA, that to be a valid assessment it "must assess such property to the persons by whom it was owned." *Vail*, 132 Mont. at 214, 315 P.2d at 998. The Court explained that "the charges made by irrigation districts are special assessments not taxes, although they are administered and collected in the same general manner as taxes. It is elementary that this requires assessment to individual owners by individual ownership." *Vail*, 132 Mont. at 214, 315 P.2d at 998 (citation omitted). Similarly, in *Musselshell County*, relied on extensively by the Court, the assessment related to a mining claim. We recognized that the added taxable interest of the mining claim to the real estate "should be separately assessed" from the real property. *Musselshell County*, 92 Mont. at 210, 11 P.2d at 777. Rather than deciding whether the misnomer statute

28

pertaining to real property also applied to the separate personal property interest of the mining claim, the Court simply modified the judgment to reflect an assessment against the owner of the mining claim. *Musselshell County*, 92 Mont. at 210-11, 11 P.2d at 777-78. This was also consistent with our subsequent explanation in *Rist* that "the originator of the royalty is still the owner of the real property to which it relates, and that the assignee's interest is only in the 'produce or profit' therefrom,--namely, in the *personal property* which the owner is to receive for the granted privilege of producing minerals from his land." *Rist*, 117 Mont. at 432, 159 P.2d at 342-43 (emphasis supplied). Accordingly, *Musselshell County* does not establish that, like personal property, real property must be assessed in the name of the actual owner. The Court in *Musselshell County* avoided the issue by simply modifying the judgment to reflect that the assessment will run against the true owner of the mining claim, as should an assessment for a personal property interest. This was consistent with the requirement to assess personal property in the name of the actual owner pursuant to § 15-8-201(2)(a), MCA, and does not provide guidance regarding the relationship of the two misnomer statutes at issue here.

¶47    In these proceedings, as in *Cobban*, both misnomer statutes, §§ 15-8-201(4) and 15-17-325, MCA, must be applied consistently together, without confusing the provisions of § 15-8-201(2)(a), MCA. Pursuant to § 15-8-201(4), MCA, which allows an assessment against a "supposed owner," the proceedings are against the property itself and are, as the District Court found, *in rem*. If the proceeding is pursuant to

29

§ 15-8-201(2)(a), MCA, it is against personal property, or *in personum*, and must identify

the owner of the property. Our jurisprudence has expressly recognized such a distinction.

In *Cobban*, we stated:

> [I]t is plain that the listing of land in the name of a person other than the owner is but an irregularity or informality which, of itself, does not avoid the assessment nor render the tax illegal or unauthorized. The name of the owner of the real property is, for all purposes of taxation except perhaps the imposition of a personal liability, comparatively unimportant. . . . The listing of lands to the wrong person affords no ground for restraining the collection, by sale of the property itself, of the taxes due thereon.

*Cobban*, 23 Mont. at 349, 59 P. at 2-3 (internal citations omitted). Similarly, in *Meyer*

we held that "[t]he reason for the statute and the cases holding likewise is that the tax sale

is a proceeding *in rem* against the property itself and not *in personum*." *Meyer*, 132

Mont. at 192, 315 P.2d at 514. Further, in *Sutter* we explained:

> Under our statutes property must be assessed in the name of the owner if known, but if unknown it must be assessed to unknown owners. (Sec. 2009, supra.) A mistake in the name of the owner or supposed owner does not affect the validity of the assessment. (Sec. 2002, Rev. Codes; *County of Musselshell v. Morris Development Co.*, 92 Mont. 201, 11 P.2d 774.) This points to the conclusion that in some respects at least the procedure for taxation of real property and enforcing collection of taxes is *in rem* and not *in personam*, and this court has so indicated in *State ex rel. Freebourn v. Yellowstone County*, 108 Mont. 21, 88 P.2d 6, as well as in *Averill Machinery Co. v. Freebury Bros.*, 59 Mont. 594, 198 P. 130. Defendants assert that the *Averill Case* recognizes the proceedings as *in rem* only when the property is actually assessed to an unknown owner. We do not so interpret that case. They also rely upon the cases of *Hilger v. Moore*, 56 Mont. 146, 182 P. 477, *State ex rel. Tillman v. District Court*, 101 Mont. 176, 53 P.2d 107, 103 A.L.R. 376, *Ford Motor Co. v. Linnane*, 102 Mont. 325, 57 P.2d 803, and *Christofferson v. Chouteau County*, 105 Mont. 577, 74 P.2d 427, as sustaining the view that tax proceedings in Montana are *in personam*. The opinions in those cases use language pointing to that conclusion. Those cases state that "taxes are levied against the person, not the property"; they do not treat of the precise question here

30

> under consideration. While taxes may be levied against the person, there is no continuing personal obligation on the part of the owner, but the obligation is terminated when the tax lien is foreclosed. (*Calkins v. Smith*, 106 Mont. 453, 78 P.2d 74.)
>
> We hold that proceedings for the enforcement of a tax obligation when proceedings are against the property, as here, rather than by suit under section 2253, Revised Codes, are *in rem*. If that were not so, it is doubtful whether taxes could ever be collected against a non-resident owner of property in this state. Proceedings to effect collection of taxes on real property by foreclosure of the tax lien are *in rem* and not *in personam*.

*Sutter*, 110 Mont. at 393-94, 103 P.2d at 305.

¶48    The two misnomer statutes under scrutiny here have existed in our law since 1887. Section 46, an act to provide for the levy of taxes and assessment of property, provided: "When any lands or town lots are offered for sale for any taxes, it shall not be necessary to sell the same as the property of any person or persons; and no sale of any land or town lot for taxes shall be invalid on account of its having been charged on the assessment roll in any other name than that of the rightful owner or charged as unknown . . . ." In 1891, and thereafter in 1895, similar statutes were enacted making it "plain that the listing of land in the name of a person other than the owner is but an irregularity or informality which, of itself, does not avoid the assessment nor render the tax illegal or unauthorized." *Cobban*, 23 Mont. at 349, 59 P. at 2. This Court recognized, as early as 1899, "[t]he name of the owner of the real property is, for all purposes of taxation except perhaps the imposition of a personal liability, comparatively unimportant." *Cobban*, 23 Mont. at 349, 59 P. at 2. We drew from the authority of numerous other states in support of such an interpretation: *Landregan v. Peppin*, 24 P. 859 (Cal. 1890); *Haight v. Mayor of N.Y.*, 1 N.E. 883 (N.Y. 1885); *Merrick v. Hutt*, 15 Ark. 331 (Ark. 1854); *Trust Co. v. Weber*,

31

96 Ill. 346 (Ill. 1880); *State v. Matthews*, 40 N.J.L. 268 (N.J. 1878); *Bradley v. Bouchard*, 48 N.W. 208 (Mich. 1891); *Hill v. Graham*, 40 N.W. 779 (Mich. 1888); *Stilz v. City of Indianapolis*, 81 Ind. 582 (Ind. 1882); *Schrodt v. Deputy*, 88 Ind. 90 (Ind. 1882); and *Strauch v. Shoemaker*, 1 Watts & Serg. 166 (Pa. 1841). Accordingly, it was quite clear that "the listing of lands to the wrong person affords no ground for restraining the collection, by sale of the property itself, of the taxes due thereon. . . ." *Cobban*, 23 Mont. at 349, 59 P. at 3. We explained that the tax statutes "prohibit courts and judges from enjoining the collection of any tax, and from restraining the sale of the property for nonpayment of any tax, except in those instances where the tax is illegal, or not authorized by law, or where the property is exempt from taxation . . . ." *Cobban*, 23 Mont. at 349-50, 59 P. at 3.

¶49 Four years later, in 1903, this Court considered the effect on an assessment of a mistake in the name of the owner of personal property and whether it differed from a mistake in the name of the owner of real property. *Birney*, 28 Mont. at 64, 72 P. at 293. The Court first examined the statute pertaining to assessment of land, which provided: "[w]hen land is sold for taxes correctly imposed as the property of a particular person, no misnomer of the owner, or supposed owner, or other mistake relating to the ownership thereof, affects the sale, or renders it void or voidable." *Birney*, 28 Mont. at 67, 72 P. at 294. Next, the Court applied the rule of interpretation "*Expressio unis est exclusion*

32

*alterius*,"[2] reasoning that a mistake in the name of the owner of real property does not invalidate the tax, but that an assessment of personal property to a named person other than the owner is absolutely void. *Birney*, 28 Mont. at 67, 72 P. at 294. While I do not disagree with the Court's final evaluation of *Birney*, that mistakes relating to ownership of personal property are not excused, Opinion, ¶ 27; the significance of *Birney* for purposes of this proceeding is that the Court reasoned that because the misnomer statute at issue related specifically to real property, the same could not apply to mistakes in the owner of personal property. A mistake in the owner of personal property, accordingly, would invalidate an assessment. *Birney* simply provides additional support for the long-recognized distinction between mistakes in owners of real and personal property and the corresponding effect on the validity of the assessment.

¶50    In my opinion, the foregoing historical precedent accumulated over the course of a century demonstrates the Court's error in applying principles of taxation for personal property to the taxation of real property. I dissent from the Court's decision to depart from this well-reasoned precedent and our failure to recognize a distinction between taxation of real property and that of personal property. I dissent also for the simple reason that Gunnersfield received actual notice that he had failed to pay taxes owing on his real property.

/S/ LAURIE McKINNON

---

[2]  *Expressio unis est exclusion alterius* is a "canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." *Black's Law Dictionary* 602 (Bryan A. Garner ed., 7th ed. 1999).