MARTIN, RESPONDENT, *v.* GLACIER COUNTY ET AL., APPELLANTS.

(No. 7,515.)

(Submitted March 11, 1936.   Decided April 11, 1936.)

[56 Pac. (2d) 742.]

*Mr. G. S. Frary, Messrs. Hall & McCabe* and *Mr. Edward C. Alexander,* for Appellants other than Glacier County and Montana Power Gas Company, and *Mr. Horace W. Judson, Messrs. Cooper, Stephenson & Hoover,* and *Mr. J. E. Corrette, Jr.,* for said County and Gas Company, submitted an original reply and supplemental briefs; *Mr. H. C. Hall* and *Mr. Alexander* argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal from a judgment quieting title to a 40-acre tract of land lying in Glacier county.

From the proof adduced on the trial and the court's findings of fact thereon, the circumstances leading up to the judgment are substantially as follows: One David B. Inghram, a resident of Idaho, purchased the land in question in 1923; it was regularly assessed for state and county taxes for that year, and the taxes were duly levied thereon, but were not paid, and, on the treasurer's sale of property for delinquent taxes, this tract was "struck off" to the county and a certificate of tax sale issued to it. This certificate recites, and it is not disputed, that the property was duly advertised for sale; that it was regularly offered for sale for the taxes due, "including fifty cents for the certificate of sale," but there was no bidder therefor on the first day, to-wit, February 1, 1924, and that "thereafter, on a day following, to-wit, the 1st day of February, 1924," the treasurer reoffered the property, "and again there being no bidder, it was struck off to the county."

Subsequent taxes, duly assessed and levied, were unpaid, and on August 2, 1929, the county, after more than 30 days' notice, applied for and received a tax deed to the land. The notice of application for the deed contains the declaration that the amount necessary to redeem is $83.08, which included the 50-cent item for the certificate of sale and, perhaps, a small amount of interest on penalty, as it is claimed that the true amount necessary to redeem was $82.43.

The proof of posting recites only that the notice was posted "upon a fence post which is located upon the premises." In addition to the posting, the notice was published in a newspaper and the county served a copy of the notice upon Inghram by registered mail, received by him or someone for him on July 6, 1929, but mailed on June 27. The recitals in the tax deed disclose the irregularities in the sale and certificate thereof.

After receiving the deed, the county instituted an action against Inghram and others to quiet title to the land in question, which was prosecuted to judgment in favor of the county, but it is contended that this judgment is void for insufficiency of service.

216

In 1932 the county entered into a "contract of sale" with defendant Louis B. O'Neill, who assigned to Earl C. Robb and others, the remaining individual defendants, and they in turn entered into an oil and gas lease with the Montana Power Gas Company.

On January 4, 1935, an emissary of this plaintiff visited Inghram at his home in Idaho, and, although Inghram disclaimed any interest in the land, induced him to execute a quitclaim deed to plaintiff by representing to him that plaintiff had purchased the tax title and merely desired a quitclaim deed to clear the title and avoid litigation. Having acquired this deed, plaintiff instituted action to quiet her title as against the owners of the tax title, asserting that the tax deed is void in that it discloses upon its face that (1) the property was struck off to the county on the first day of sale; (2) it was sold to the county for an amount in excess of the taxes due; (3) the notice of application for deed did not state the correct amount to be paid on redemption; and (4) the posting of the notice did not meet the requirements of the law. It is further contended that the judgment secured is void on the face of the judgment roll, as it shows that the law with respect to service of summons was not fully complied with. The trial court sustained these contentions, and they are now urged here in support of the judgment.

Conceding that the defects pointed out would, under our decisions construing the provisions of the Code which outline the procedure for securing a tax deed, render the instant deed void (*Glacier County* v. *Schlinski*, 90 Mont. 136, 300 Pac. 270, 272; *Shubat* v. *Glacier County*, 93 Mont. 160, 18 Pac. (2d) 614; *Glacier-County* v. *Halvorson Mercantile Co.*, 93 Mont. 520, 19 Pac. (2d) 648; *Small* v. *Hull*, 96 Mont. 525, 32 Pac. (2d) 4), does not dispose of the question here presented. There remains the question as to whether or not the legislature could, and did, cure the defects mentioned and render the deed valid, regardless of such defects.

The plaintiff's counsel asserts that the decision in the *Schlinski Case* is directly in point and that the question is "closed"

by what is there said. With this assertion we cannot agree. Therein it is pointed out that the validating act of 1927 (Chap. 85, Laws of 1927) merely prohibited an attack upon such a deed as this after the expiration of one year, and was not applicable therein, as the action was commenced within the year, and, in view of the fact that the deed attacked was issued before the effective date of Chapter 31, Laws of 1929, and there was then no existing Act purporting to cure defective deeds, the court said: "Whether or not the legislature could cure defects in a certificate of sale which has become *functus officio* by reason of the issuance of the deed, we need not now determine. * * * A curative statute relating only to 'irregularities' in a certificate of sale is inapplicable in a suit to set aside a so-called tax deed void on its face." Further, inasmuch as the validating Act of 1933, Chapter 79, was not passed until long after the judgment in the *Schlinski Case* was entered, that Act was not mentioned in the opinion. It is therefore apparent that the Schlinski opinion did not presume to determine the effect of any validating Act.

Here the certificate of sale was still in effect when the Act of 1929 became effective, and the instant tax deed was issued and in effect prior to the enactment of the validating Act of 1933 (Chapter 79, Laws of 1933); the defects relied upon to invalidate the tax deed were therefore cured, if the validating Acts are valid and the irregularities in the certificate of sale and the deed are such as can be cured by the legislature.

It is asserted that Chapter 31, Laws of 1929, violates the provisions of section 23, Article V, of the Constitution, in that its title does not clearly express the legislative intent to deal therein with tax certificates. The title merely declares that it is "An Act to Amend Section 2191 * * * as Amended * * * Relating to Sale of Lands for Taxes Due Thereon," etc. Such a title has been too often held sufficient to require discussion here. (*Durland* v. *Prickett*, 98 Mont. 399, 39 Pac. (2d) 652; *State ex rel. Nagle* v. *Leader Co.*, 97 Mont. 586, 37 Pac. (2d) 561; *State ex rel. Souders* v. *District*

*Court,* 92 Mont. 272, 12 Pac. (2d) 852; *Hale* v. *Belgrade Co.,* 74 Mont. 308, 240 Pac. 371.)

Chapter 31, Laws of 1929, which became effective July 1, 1929, prior to the issuance of the tax deed in this case, and was therefore applicable to the certificate of sale to the county then outstanding, declares: ''All certificates of sale heretofore issued to any County on the purchase by such County of real property sold at any delinquent tax sale and which certificates of sale are now held by such County, are hereby declared to be valid and subsisting certificates of sale for all purposes, notwithstanding any irregularities in the manner of publishing the delinquent tax list, or in holding such sale, or in selling such property or in the issuance of such certificates of sale, or in the form thereof.''

Thereafter the tax deed was issued to the county, and subsequent thereto the legislature enacted Chapter 79, Laws of 1933, which declares that ''any tax deed heretofore issued in this state shall not be held invalid by reason of any defect in the form, substance or amounts stated to be due in the notice of application for tax deed and all tax deeds heretofore issued are legalized and declared to be valid and legal regardless of any error, defect, omission, irregularity or failure to correctly state the amount due in the notice of application for tax deed.''

Clearly, the legislature has attempted to validate any tax deed and the certificate of sale on which it is issued as to, and in spite of, the very defects, errors and irregularities pointed out in the proceedings here contested, and the only question remaining is as to the legislature's power to enact such a law.

Citing Cooley's Constitutional Limitations (530–545), this ▉▉▉ court has said: ''A retrospective statute curing defects * * * where they are in their nature irregularities only, and do not extend to matters of jurisdiction, is not void on constitutional grounds. * * * But the healing statute must in all cases be confined to validating acts which the legislature might previously have authorized. * * * If the thing wanting or which failed to be done, * * * is something the necessity for which the legislature might have dispensed

with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.'' (*Lamont* v. *Vinger*, 61 Mont. 530, 202 Pac. 769, 773.)

In order to vest the treasurer with jurisdiction to sell real ██ estate for delinquent taxes, there must be (1) a valid assessment; (2) a valid levy; and (3) nonpayment of the tax so duly levied and assessed. (3 Cooley on Taxation, sec. 1393 et seq.) These jurisdictional requirements appearing, the requirement to sell is mandatory. (Sec. 2183, Rev. Codes 1921; Chap. 96, Laws of 1923; *State ex rel. Spokane & Eastern Trust Co.* v. *Nicholson*, 74 Mont. 346, 240 Pac. 837.) Deeds void on their face for jurisdictional defects ''are not deeds but nullities,'' and, as to these, curative Acts are unavailing; they may be attacked at any time. (*Cullen* v. *Western Mortgage & Warranty Title Co.*, 47 Mont. 513, 134 Pac. 302; *Horsky* v. *McKennan*, 53 Mont. 50, 162 Pac. 376; *Lindeman* v. *Pinson*, 54 Mont. 466, 171 Pac. 271.)

No attack is made upon the proceedings here involved on ██ these jurisdictional grounds; the only jurisdictional question here presented is with regard to the notice of application for the tax deed. Failure to give any notice of such application divests the treasurer of authority to issue the deed, as such procedure violates the ''due process'' provision of the Constitution (Art. III, sec. 27). (*Small* v. *Hull*, supra.)

While the trial court made a finding to the effect that no notice of application for tax deed ''in the form prescribed by law'' was given to Inghram, the owner of the real property, either personally or by registered mail, nor was he given ''any written notice'' of the amount necessary to redeem or the time when the redemption could be made, and further that the county failed to ''post in a conspicuous place on the property'' such a notice, or to file proof of service of such notice by posting or publication, as required by law, the fact is that the notice of

application for tax deed, subject to the infirmities of which complaint is made, was published in a newspaper and a copy thereof sent by registered mail to Inghram, received and receipted for, as above mentioned, and a copy thereof was posted "on a fence post" on the premises.

It is apparent that Inghram, the owner of the premises at the time the deed was issued, had notice that the county would, on August 2, 1929, apply for the deed; that he made no attempt to, and did not care to, redeem, and thereafter considered that he had no interest in the property. The case does not, therefore, present the problem of protecting the "true owner" from loss of his property for the nonpayment of taxes constituting but a fraction of its value, but as to which of two speculators should prevail; the one having purchased the tax title to property which is evidently of considerable value for something less than $100 and the other having secured a quitclaim deed for the recited consideration of $1, by misrepresentation and from one who claimed no interest in it. The plaintiff, it is true, secured whatever title remained in Inghram, but the equities of the situation need not give us great concern.

Under the rules above announced, if the defects asserted against the tax title are of such a nature that the legislature might have made them immaterial by prior law, the quoted curative Acts render them immaterial in this action.

Whether the date on which the property was struck off to the county was February 1, or, as recited, the property was again offered "on the day following," which was erroneously given as February 1st instead of 2d, is immaterial.

There can be no question but that, had the legislature seen fit to do so, it could have originally provided that, when the property is regularly offered for sale for delinquent taxes, if there is no bid therefor, the property shall be struck off to the county. Likewise the provision as to notice of the application for tax deed could well have directed that, in the case of a nonresident owner, the application shall be published in a local paper and a copy thereof sent by registered mail to the last-known address of the owner. And, with reference to the recitation in the notice of the amount for which the property was

sold and the amount necessary to redeem from the sale, there can be no constitutional or jurisdictional objection to a law which would provide that "the true amount necessary to redeem the property from the sale may be ascertained at the office of the county treasurer," without requiring the applicant for a deed to mention in the notice the amount of delinquent taxes for which the property was originally sold, or which had accrued. The defects mentioned and on which the plaintiff relies are but irregularities and none of them affect the jurisdiction of the officials named.

The rights of the owner of the property, the delinquent taxpayer, would be as fully protected had the statute authorized what was done in this instance as they would have been had the officials strictly complied with the law. Consequently, the legislature had the power to cure the defects appearing in the certificate of sale, while that instrument was still effective, and to cure the defects in the deed after it was issued. Such is the holding of courts generally. (*Williams* v. *Supervisors of Albany County,* 122 U. S. 154, 163, 7 Sup. Ct. 1244, 30 L. Ed. 1088; *Breaux* v. *Negrotto,* 43 La. Ann. 426, 434, 9 So. 502; *In re Commissioners,* 49 N. J. L. 488, 497, 10 Atl. 363; *Ensign* v. *Barse,* 107 N. Y. 329, 338, 14 N. E. 400, 15 N. E. 401; *Bank* v. *Fulgham,* 151 Cal. 234, 90 Pac. 936; *Witt* v. *Evans,* 36 N. M. 365, 16 Pac. (2d) 60; *Larson* v. *Dickey,* 39 Neb. 463, 58 N. W. 167, 42 Am. St. Rep. 595; *Raley* v. *Guinn,* 76 Mo. 263.)

As we now hold that the tax deed passed good title, we need not consider the question of the sufficiency of service of summons in the action prosecuted by the county to quiet title.

The judgment is reversed and the cause remanded to the district court, with direction to enter judgment in favor of the defendants.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.