JUSTICE BAKER
delivered the Opinion of the Court.
¶1 In 2008, Gunnersfield Enterprises, Inc. purchased five condominium units and an adjoining vacant lot. The deed was properly recorded and a Realty Transfer Certificate was submitted to the Department of Revenue, which did not correctly update its ownership records for the vacant lot. Gunnersfield received notice of and paid the tax assessments for the five condominium units each year, but the Gallatin County Treasurer continued to send the tax bills for the vacant lot to the previous owner. When the taxes went unpaid, the Treasurer sold the lot for delinquent taxes. Zinvest, LLC acquired the County’s interest. Gunnersfield now appeals the District Court’s determination to quiet title to Zinvest. We reverse and remand, concluding that the Department of Revenue’s defective property tax assessment voided the tax lien sale.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 In June 2008, Gunnersfield purchased five commercial condominium units, known as Units 1 through 5, and an adjacent fenced lot, known as Lot 6A, from Prospero, LLC in a single transaction. A single Warranty Deed conveying all of the property to Gunnersfield was recorded that same month in the records of the Gallatin County Clerk and Recorder. The Department of Revenue (Department) received both a copy of the deed and the Realty Transfer Certificate in 2008. While the Department correctly updated its ownership records for Units 1 through 5, it did not update the ownership record for Lot 6A.
¶3 Gunnersfield paid all property tax notices it received from the Gallatin County Treasurer (County) for the property. The notices it received, however, were for the five condominium units only. From 2009 through 2012, the County continued to send tax bills for Lot 6A *336 to Prospero, the former owner. Beginning in the second half of 2009 and continuing in the subsequent years, the taxes for Lot 6A went unpaid. In July 2010, the County offered a property tax lien for sale against Lot 6A for the 2009 delinquent taxes. At that time there was no purchaser and the County was listed as the purchaser of the lien. ¶4 In 2012, Zinvest, LLC became interested in the property and took action to acquire the tax lien from the County. Zinvest sent the statutorily required notice of pending assignment of the tax lien to Prospero, which the U.S. Postal Service returned undelivered. Zinvest did not send notice to Gunnersfield. Upon Zinvest’s payment of the delinquent taxes, interest, and fees, the County assigned its tax lien interest in the property to Zinvest on October 9, 2012.
¶5 Zinvest then began the process to acquire a tax deed on the property. During this process, Zinvest obtained a Litigation Guarantee from Stewart Title, which revealed that the title to Lot 6A had vested in Gunnersfield in 2008. Zinvest sent a notice that a tax deed may issue to Prospero, to Gunnersfield, and to the County. Gunnersfield admits that it received this notice. In an affidavit from Jon Chaney, the President and majority shareholder of Gunnersfield, Gunnersfield attested that it inquired with the County about what property was at issue in the notice. The County office staff informed Gunnersfield that the notice pertained to the property located at 153 Shepherd Trail, the street address for the condominium building. Lot 6A has no street address. Gunnersfield maintains that it assumed the notice must relate to condominium Units 6 and 7, which it believed Prospero still owned, because Gunnersfield had never been notified, and was unaware, of any delinquent taxes on its own properties. In September 2013, when the period for redemption expired, the County issued a tax deed to Zinvest.
¶6 Zinvest filed a quiet title action for the property in the District Court in October 2013. During this litigation, Zinvest’s attorney sent a letter to Gunnersfield requesting that it sign a Disclaimer of Interest. Gunnersfield signed and returned the Disclaimer of Interest, again believing that the proceedings related to Units 6 and 7, and not to Lot 6A. The District Court granted final judgment and quieted title to Zinvest in May 2014.
¶7 Realizing its error in February 2015, Gunnersfield filed a motion for relief from judgment with the District Court. The court granted the motion and struck Gunnersfield’s prior Disclaimer of Interest from the record, reasoning that it was “not unreasonable” for Gunnersfield to assume that the proceedings did not pertain to its property and that “negligence in this instance [was] excusable.” Following additional *337 briefing and argument, the District Court denied Gunnersfield’s motions for summary judgment and granted Zinvest’s motion. It issued a final judgment on December 2, 2016, quieting title to Zinvest.
STANDARDS OF REVIEW
¶8 This Court reviews a district court’s grant or denial of summary judgment de novo. RN & DB, LLC v. Stewart, 2015 MT 327, ¶ 13, 381 Mont. 429, 362 P.3d 61. Like the district court, we apply the criteria of M. R. Civ. P. 56(c)(3) to determine whether there is a “genuine issue as to any material fact” and whether “the movant is entitled to judgment as a matter of law.” M. R. Civ. P. 56(c)(3); see also RN & DB, LLC, ¶ 13. If there is no genuine issue of material fact, we review for correctness the district court’s conclusion that the moving party is entitled to judgment as a matter of law. RN & DB, LLC, ¶ 13.
¶9 We review de novo a district court’s interpretation and application of a statute. Dick Irwin Inc. v. State, 2013 MT 272, ¶ 18, 372 Mont. 58, 310 P.3d 524.
DISCUSSION
¶10 Whether the defective property tax assessment voided the tax lien sale.
¶11 It is undisputed that Gunnersfield properly recorded its deed to Lot 6A and that the Department received the Realty Transfer Certificate, which showed correctly the conveyance of Lot 6A from Prospero to Gunnersfield. It is also undisputed that the Department continued to assess Lot 6A to Prospero, rather than to Gunnersfield; that Gunnersfield did not receive any notices of taxes due on Lot 6A; and that Gunnersfield paid all taxes due on the notices it did receive for Units 1 through 5. Gunnersfield argues that, under these facts, the Department’s tax assessments on Lot 6A were invalid.
¶12 Among its arguments before the District Court, Gunnersfield contended that errors in the tax assessment of the property invalidated the assessment and therefore rendered void the tax deed to Zinvest. The District Court disagreed and held that, even though the wrong party was assessed, the tax assessment was valid under § 15-8-201(4), MCA. The District Court reasoned further that the language in the misnomer statute protecting tax lien sales, § 15-17-325, MCA, supported this understanding. It quoted two cases from this Court in support—Cobban v. Hinds, 23 Mont. 338, 349, 59 P. 1, 2 (1899), and Meyer v. Chessman, 132 Mont. 187, 192, 315 P.2d 512, 514 (1957).
¶13 On appeal, Zinvest argues that the District Court decided the case correctly and that the tax assessments were procedurally proper. In *338 support, it argues that the language of §§ 15-8-201(4) and 15-17-325, MCA, as well as some of our prior case law, indicates that taxation is an in rem proceeding, not an in personam proceeding. Zinvest thus contends that a valid assessment does not require that the actual owner of the property be assessed, as long as some individual person or entity is assessed for the parcel of property at issue. Finally, Zinvest argues that it is the responsibility of taxpayers to exercise diligence and ensure their property taxes are paid.
¶14 Title 15 of the Montana Code Annotated encompasses the statutes governing taxation in the state of Montana. It prescribes a detailed process both for the assessment and taxation of property and for the sale of property for unpaid taxes. The process involves multiple steps and multiple levels of government. The Department of Revenue is tasked with valuing all of the taxable property in the state and with maintaining the database of ownership and property value information. See §§ 15-7-101, -304, 15-8-101, -201, MCA. Based on information from the Department, each taxing jurisdiction calculates its own mill levy and submits it to the Department. See §§ 15-10-201, -202, MCA. The Department computes the taxes, fees, and assessments to be levied and provides this information to each county’s clerk and recorder and treasurer. Section 15-10-305, MCA. The county treasurer in turn produces and mails the property tax bills, collects the property taxes, and distributes the monies to the taxing jurisdictions. Sections 15-16-101, -104, MCA. Failure to pay taxes can result in the county treasurer taking actions under Title 15, chapter 17, MCA, to sell a tax lien on the delinquent property, and, if the taxes remain unpaid, to issue a tax deed under Title 15, chapter 18, MCA, which creates a new title extinguishing the interests of the original owner. Collier v. Kincheloe, 2008 MT 100, ¶ 15, 342 Mont. 314, 180 P.3d 1157.
¶15 Property taxes are one of the primary and most stable means available to support local government budgets. 5-39 Richard R. Powell, Powell on Real Property, § 39.02[1], 39-7 (Michael Allan Wolf ed., 2017). Failure to pay taxes is a serious breach of an individual’s social obligations, and tax liens are a powerful tool to ensure payment. Powell, supra, § 39.04, 39-37. But the tax lien statutes mandate many procedures that must be strictly followed when a county takes action to sell a tax lien or issue a tax deed “because a property owner’s fundamental interests are at stake in tax deed proceedings.” Isern v. Summerfield, 1998 MT 45, ¶ 10, 287 Mont. 461, 956 P.2d 28. In fact, “[t]he purpose behind the tax lien sales statutes is to protect property owners and their rights to due process.” Zinvest, LLC v. Hudgins, 2014 MT 201, ¶ 20, 376 Mont. 72, 330 P.3d 1135.
*339 ¶16 The interests of the property owner also find protection in the tax assessment statutes requiring that property taxes be assessed in the owner’s name. See 72 Am. Jur. 2d State and Local Taxation § 630 (2017). Among the protections that the tax assessment statutes provide is to alert property owners to tax assessments levied against them and their property. Such notice gives property owners the opportunity to dispute the government’s valuation of their land, see § 15-7-102(3), (6), MCA; see also RN & DB, LLC, ¶ 36, and helps to prevent any unwarranted property forfeitures through a tax lien sale. The latter purpose is evidenced in the fact that a valid assessment is a foundational requirement for a county treasurer to have jurisdiction to sell a tax lien for delinquent taxes. See Martin v. Glacier Cnty., 102 Mont. 213, 219, 56 P.2d 742, 744 (1936); see also Powell, supra, § 39.04[4], 39-48 (“All steps required of the public authority for a properly levied tax assessment to arise are jurisdictional prerequisites for a valid tax sale.”).
¶17 Although the entire process described above is often referred to as “taxation,” there are distinct stages. “Assessment [is] the process by which persons subject to taxation [are] listed, their property described, and its value ascertained and stated. Taxation consistís] in determining the rate of the levy and imposing it.” Vail v. Custer Cnty., 132 Mont. 205, 214, 315 P.2d 993, 998 (1957) (quoting Hilger v. Moore, 56 Mont. 146, 165, 182 P. 477, 480 (1919)) (emphasis omitted). Under current law, assessment is entirely the responsibility of the Department. Collection and enforcement are the responsibility of county treasurers. Gunnersfield argues that the errors of the Department make the tax assessment invalid.[1]
¶18 The Department must assess property taxes to “the person by whom it was owned or claimed or in whose possession or control it was at midnight of the preceding January 1.” Section 15-8-201(2)(a), MCA. Even if the owner is absent or unknown, “the department shall make an estimate of the value of the property.” Section 15-8-501(1), MCA. But the statute elaborates that “[i]f the name of the absent owner is known to the department, the property must be assessed in the owner’s name.” Section 15-8-501(2), MCA. Further, when property is sold and ownership changes, the Department is statutorily obligated upon receipt of a Realty Transfer Certificate to update ownership records used for the assessment and taxation of real property. *340 Section 15-7-304, MCA.
¶19 The language of these provisions indicates that the Legislature intended to make these protections mandatory: “the department shall assess property to ... the person by whom it was owned,” “the property must be assessed in the owner’s name,” and “[t]he department is not required to change any ownership records... unless the department has received a transfer certificate.” Sections 15-8-201(2), -501, 15-7-304(2), MCA (emphasis added). Indeed, in prior cases interpreting almost the exact same language in predecessor statutes of §§ 15-8-201(2) and -501, MCA, this Court determined that the language is mandatory in relation to both personal property and real property. See Birney v. Warren, 28 Mont. 64, 67-68, 72 P. 293, 294 (1903) (“[T]he provisions ... are mandatory, and... require the assessor to assess personal property in the name of the real owner.”); Vail, 132 Mont. at 214, 315 P.2d at 998 (quoting 3 Thomas M. Cooley, A Treatise on the Law of Taxation § 1096, 2216-17 (4th ed. 1924)) (“ ‘An assessment should ordinarily be made to the owner of record, and statutes so provide in many states ... Such statutes are mandatory so that an assessment to one not the owner makes the assessment void.’ ”).
¶20 Since those cases were decided our tax laws have been amended. The Department was created in 1973, removing the responsibility for tax assessments from county officers. Along with updating §§ 15-8-201(2) and -501, MCA, to apply to the Department rather than to county assessors, the Legislature added other responsibilities to the Department, including § 15-7-304(2), MCA, which requires the Department to update its ownership records upon receipt of a Realty Transfer Certificate. 1975 Mont. Laws ch. 528, § 4, as amended 1993 Mont. Laws (Nov. 1993 Sp. Sess.) ch. 27, § 44. These changes emphasize the importance the Legislature placed on the Department assessing taxes to the owner of the property.
¶21 Zinvest relies, as did the District Court, on §§ 15-17-325 and 15-8-201(4), MCA, to overcome the mandatory language of these statutes. Section 15-17-325, MCA, provides: “When a tax lien sale certificate is acquired, as provided [by the tax lien statutes] and the taxes were properly assessed on the property of a particular person, no misnomer of ownership or other mistake relating to ownership affects the sale or renders it void or voidable.” In plain language, this statute makes clear that it offers no curative effects unless the “taxes were properly assessed.” Section 15-17-325, MCA. The statute cannot save an otherwise invalid tax assessment. Only the curative provision in the assessment statute, § 15-8-201(4), MCA, could do so.
¶22 Zinvest argues that the District Court properly relied on Cobban, *341 23 Mont. at 348-49, 59 P. at 2, in applying § 15-17-325, MCA. Cobban upheld a tax assessment on the basis of the language in the predecessor statutes of §§ 15-8-201(4), -308, and 15-17-325, MCA. The predecessor to § 15-17-325, MCA, originally was passed in 1891. The language of the statute remained largely unchanged until 1987 when the modern tax lien statutes were enacted. 1987 Mont. Laws ch. 587, § 13. The original language in force at the time of Cobban stated: “When land is sold for taxes correctly imposed as the property of a particular person, no misnomer of the owner, or supposed owner, or other mistake relating to the ownership thereof affects the sale or renders it void or voidable.” See 1891 Mont. Laws 118. The modern statute differs in two important ways. First, the Legislature removed the language “When land is sold for taxes” and replaced it with “When a tax lien sale certificate is acquired.” This change means the modern statute now applies to both real and personal property sold at a tax sale. This highlights the important distinction we draw between § 15-17-325, MCA—which now applies to both real and personal property—and § 15-8-201(4), MCA—which applies to real property only. Second, the Legislature broke down the qualifier that taxes be “correctly imposed” into two separate predicates: (1) the county must have followed the statutory tax lien procedures; and (2) the Department must have “properly assessed” the taxes. The Legislature’s change in language indicates that the modern statute, § 15-17-325, MCA, does not apply unless the tax assessment was proper.
¶23 We next turn to the other misnomer statute, § 15-8-201(4), MCA. That provision states that “[a] mistake in the name of the owner or supposed owner of real property does not invalidate the assessment.” The provision is specific to a mistake in the name of the owner rather than to a mistake in the identity of the owner. The statute says nothing about assessing the property to the wrong person or entity entirely.
¶24 The Dissent puts much weight on the inclusion of “supposed owner” in § 15-8-201(4), MCA, in arguing that the statute excuses an assessment made to the wrong person. It cannot bear this weight. “Supposed” carries connotations of belief that something is probable or certain. The first definition of “supposed” in Webster’s Third New International Dictionary is “believed to be or accepted as such.” See Webster’s Third New International Dictionary 2298 (Philip Babcock Gove ed., 1971). The modern statutes provide a process to inform the Department of ownership changes. Gunnersfield followed this process. The Department did not “believe” Prospero was the owner, it simply had failed to update its records. There is no basis for a “supposed *342 owner” when the process outlined in § 15-7-304, MCA, is followed and the Department is informed of the actual owner. A “supposed owner” may exist if, for example, ownership changes and the new owner fails to record his or her interest in the property and to file a Realty Transfer Certificate with the Department. But these are not the facts of this case.
¶25 Our role in interpreting statutes “is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. Section 15-8-201(4), MCA, does not include a mistake in ownership and we decline to insert it. Because the provisions requiring the owner to be named are mandatory, and § 15-8-201(4), MCA, provides no cure for a defect in the identity of the owner, a tax assessment to a person or entity other than the owner, where the owner is known to the Department through properly recorded transfer records, is not a valid assessment.
¶26 Comparing the language of §§ 15-8-201(4) and 15-17-325, MCA, further supports this conclusion. Section 15-17-325, MCA, states “no misnomer of ownership or other mistake relating to ownership affects the sale or renders it void or voidable.” This language differs from the “mistake in the name” language of § 15-8-201(4), MCA. Unlike the phrasing in § 15-17-325, MCA, the phrasing in § 15-8-201(4), MCA, does not include language about mistakes relating to ownership. The language that appears in these modern provisions was first adopted into Montana law in the same act of legislation in 1891. See 1891 Mont. Laws 73, 78, 118. Because the enacting Legislature did not use identical language in the two provisions, it is proper for us to assume that a different statutory meaning was intended and that “mistake in the name” therefore does not include “misnomer of ownership or other mistake relating to ownership.” See Gregg v. Whitefish City Council, 2004 MT 262, ¶ 38, 323 Mont. 109, 99 P.3d 151 (“Different language is to be given different construction.”); In re Kesl’s Estate, 117 Mont. 377, 386, 161 P.2d 641, 646 (1945) (citations and internal quotations omitted) (“It is a settled rule of statutory construction that, where different language is used in the same connection in different parts of a statute, it is presumed the legislature intended a different meaning and effect.”).
¶27 The Dissent relies on Birney v. Warren to demonstrate that the statutes treat a mistake relating to the ownership of personal property differently from a mistake relating to the ownership of real property—that is, that such a mistake during the tax assessment voids a personal property tax sale, but not a real property tax sale. Dissent, *343 ¶ 49. Birney voided a tax sale of personal property because the property was assessed to the wrong entity. Birney, 28 Mont. at 67, 72 P. at 294. The Birney Court’s holding rested on two grounds: (1) the language of the predecessor statutes to §§ 15-8-201(2) and -501, MCA, which applies to both real and personal property, was “imperative” and thus mandatory; and (2) the predecessor statute to § 15-17-325, MCA, which excused mistakes relating to ownership, did not apply to personal property. Birney, 28 Mont. at 67-68, 72 P. at 294. Tellingly, the Birney court did not rely on the predecessor to § 15-8-201(4), MCA, to distinguish a mistake relating to ownership of real property, but relied only on the predecessor to § 15-17-325, MCA. Further, as discussed above, after the 1987 amendments to § 15-17-325, MCA, that statute now applies both to real property and to personal property sold at a tax sale and requires “properly assessed” taxes. Section 15-17-325, MCA, is no longer a basis for a distinction between a mistake in the ownership of real property as opposed to a mistake in the ownership of personal property. And as we discussed above, § 15-8-201(4), MCA, does not cure a failure to name the record owner at all.
¶28 Zinvest next argues that the tax assessment process and the subsequent tax lien sale are in rem proceedings that require only that an individual or entity be assessed, not that the actual owner be assessed. Zinvest cites three cases in support: Meyer, 132 Mont. at 192, 315 P.2d at 514; Sutter v. Scudder, 110 Mont. 390, 394, 103 P.2d 303, 305 (1940); and Cobban, 23 Mont. at 349, 59 P. at 2.
¶29 Zinvest’s argument that proceedings are in rem, rather than in personam, conflates the tax assessment with tax enforcement. Assessment is the responsibility of the Department. Responsibility for enforcement lies with the counties. The error in the present case occurred in the tax assessment itself. None of our prior cases have held that the assessment itself is in rem. Vail, 132 Mont. at 213, 315 P.2d at 998 (“The tax sale is the proceeding in rem”); Meyer, 132 Mont. at 192, 315 P.2d at 514 (“[T]he tax sale is a proceeding in rem against the property itself.”); Sutter, 110 Mont. at 394, 103 P.2d at 305 (“We hold that proceedings for the enforcement of a tax obligation when proceedings are against the property ... are in rem.”).
¶30 Further, Zinvest’s argument that the proceedings are in rem, rather than in personam, is a distinction without a difference in this case. Characterization of the assessment as in rem or in personam does not change the statutory requirements that property be assessed to the owner. See §§ 15-8-201(2), -501,15-7-304(2), MCA. Developments in in rem jurisprudence over the last forty years also support this position. The United States Supreme Court has rejected the traditional *344 justifications for distinguishing between in rem and in personam proceedings. Shaffer v. Heitner, 433 U.S. 186, 212, 97 S. Ct. 2569, 2584 (1977) (requiring assertions of in rem jurisdiction to meet the same requirements as assertions of in personam jurisdiction); Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 796 n.3, 103 S. Ct. 2706, 2710 n.3 (1983) (holding that a mortgagee with a legally protected property interest is entitled by due process to notice of a tax sale and quoting Shaffer, 433 U.S. at 206, 97 S. Ct. at 2580, “An adverse judgment in rem directly affects the property owner by divesting him of his rights in the property before the court.”). Our approach to interpreting the requirements of §§ 15-8-201(2), -501, and 15-7-304(2), MCA, does not hinge on whether the proceeding is in rem or in personam. Even if we were to hold that the tax assessment is an in rem proceeding, this would not change our interpretation of the statutory requirements that property must be assessed in the name of a known owner.
¶31 A closer look at the case law Zinvest cites convinces us that this conclusion is correct. First, Meyer and Sutter are distinguishable. In Meyer, the parties challenged the lack of notice before the county issued the tax deed. Meyer, 132 Mont. at 191, 315 P.2d at 514. The case did not raise or address any alleged errors during the tax assessment. In Sutter, tax assessment notices were sent to the record owner of the property, who had passed away. Sutter, 110 Mont. at 392, 103 P.2d at 304. His heirs had neither gone through probate in Montana nor taken any steps to record their interest in the property. Sutter, 110 Mont. at 392, 103 P.2d at 304. The heirs challenged the tax sale because they, as the current owners, had not received actual notice of the tax assessments. Sutter, 110 Mont. at 393, 103 P.2d at 305. We upheld the tax assessment as proper, however, because the record owner, i.e., the “supposed owner”, was assessed and tax notices were sent to the last known address. Sutter, 110 Mont. at 395, 103 P.2d at 306. We held that the heirs should have taken steps to properly record their interest and also that it was “incumbent upon a property owner to take notice of the known fact that all property is taxed annually, and unless the taxes are paid that the property will be sold at tax sale.” Sutter, 110 Mont. at 395, 103 P.2d at 305.
¶32 Sutter counsels a different result under the facts of the present case. Gunnersfield properly recorded its interest and a Realty Transfer Certificate was sent to the Department to notify it to update its records. But the Department failed to assess the owner of record, Gunnersfield. Further, Gunnersfield paid the annual taxes on the portion of the property for which it was assessed and therefore did not have notice that it was not paying any annual taxes that were due.
*345 ¶33 The final case on which both Zinvest and the District Court relied is Cobban v. Hinds. The language in Cobban suggests that the correct listing of the owner is a mere formality and listing the lands to the wrong person during the tax assessment was not grounds for voiding a tax sale. Cobban, 23 Mont. at 349, 59 P. at 2. Cobban is not controlling for several reasons. First, as we discussed above, Cobban rested its holding on three statutes, including the predecessor to § 15-17-325, MCA. The current language of § 15-17-325, MCA, undermines Cobban’s holding relying on that statute. Further, the tax assessment statutes also have been amended and now include § 15-7-304, MCA, which obligates the Department to update ownership records when it is notified of real property transfers. More, the plain language of the assessment statutes imposes a requirement on the Department to assess land in the name of the owner.
¶34 Second, our subsequent case law also has undermined the decision. In Musselshell County v. Morris Development Company, 92 Mont. 201, 203, 11 P.2d 774, 775 (1932), Roundup Coal Mining Company quitclaimed only the surface rights to Morris Development Company and “reserve[d] to itself all coal and other minerals underlying the surface.” Musselshell County, 92 Mont. at 203, 11 P.2d at 775. Thus, Roundup Coal Mining Company retained a fee simple interest in the minerals in the ground.[2] The county assessed Morris Development for the mining claim but this Court held that Roundup Coal Mining was the proper party to tax. Musselshell Cnty., 92 Mont. at 209-10, 11 P.2d at 777. This Court explained that “separate estates or interests should be separately assessed to the respective owners” and declined to decide whether the assessment against Morris Development would be valid for all purposes against Roundup Coal Mining. Musselshell Cnty., 92 Mont. at 210, 11 P.2d at 777. Despite citing Cobban and Cullen v. Western Mortgage & Warranty Title *346 Company, 47 Mont. 513, 134 P. 302 (1913),[3] the Musselshell County Court ordered that steps be taken to change the assessment to the Roundup Coal Mining Company, “[t]o obviate any question regarding the validity of the assessment,” suggesting that even after Cobban the effect of mistaken identity of the owner on the validity of a tax assessment remained an open question. Musselshell Cnty., 92 Mont. at 211, 11 P.2d at 778.
¶35 Further, Cobban directly conflicts with the later decided case of Vail.[4] Both cases dealt with the propriety of the assessment of several parcels of land together without any separation of the assessment between landowners who owned individual parcels. Vail, 132 Mont. at 208, 315 P.2d at 995; Cobban, 23 Mont. at 348, 59 P. at 2. But the two cases arrived at opposite conclusions. The Cobban Court upheld the tax sale, ruling that the single assessment of multiple properties with various owners was proper. Cobban, 23 Mont. at 348, 59 P. at 2. In Vail, however, this Court reaffirmed that taxes are levied upon persons—not upon property—and invalidated the tax lien on the property. Vail, 132 Mont. at 213, 315 P.2d at 998. We held that an assessment made en bloc to an entire development, rather than to the individual landowners within the development, was void. Vail, 132 Mont. at 213, 315 P.2d at 998. To the extent that Cobban conflicts with Vail, it implicitly was overruled. We decline to rely on any language in Cobban taken out of context, especially when our decision in Vail and amendments to the statutes already have undermined the foundation of Cobban and bring its continued validity into question.
¶36 Finally, Zinvest argues that voiding the tax lien sale “would effectively absolve the property owner from any level of diligence in the assessment process.” Zinvest is correct that “it is incumbent upon a property owner to take notice of the known fact that all property is taxed annually, and unless the taxes are paid that the property will be sold at tax sale.” Sutter, 110 Mont. at 395, 103 P.2d at 306. But“[m]ore *347 importantly, a party’s ability to take steps to safeguard its interests does not relieve the State of its constitutional [due process] obligation.” Mennonite Bd. of Missions, 462 U.S. at 799, 103 S. Ct. at 2712. There is nothing in the record to indicate that Gunnersfield had reason to know that the Department was not assessing the taxes for Lot 6A to Gunnersfield. During the time in question, the County taxed Units 1 through 5 together. It was reasonable for Gunnersfield to believe—and the record lacks any evidence that Gunnersfield believed otherwise—that its tax bill included Lot 6A, which was purchased in the same transaction and was conveyed to Gunnersfield in the same deed. In fact, when it received the notice from Zinvest that a tax deed may issue, Gunnersfield did inquire with the County. This inquiry only buttressed Gunnersfield’s belief that the notice did not pertain to its properties, because it had paid all tax notices it had received and was unaware of any delinquent taxes on its properties.
¶37 We conclude that the tax assessment on Lot 6A was invalid. Because the tax assessment was void, the subsequent tax lien sale and issuance of a tax deed also must be voided. We require strict compliance with “every essential and material step required by the tax deed statute.” Moran v. Robbin, 261 Mont. 478, 482-83, 863 P.2d 395, 398 (1993). In order for a county treasurer to have the jurisdiction to sell real property for delinquent taxes, “there must be (1) a valid assessment; (2) a valid levy; and (3) nonpayment of the tax so duly levied and assessed.” Martin, 102 Mont. at 219, 56 P.2d at 744. The County lacked jurisdiction to hold the tax lien sale on the property because there was no valid assessment. The subsequent tax deed issued to Zinvest is void and its quiet title action must fail.
¶38 This does not mean that Gunnersfield is relieved from its tax obligations for Lot 6A. Under § 15-8-601, MCA, the Department may assess property for prior erroneous assessments within ten years of the calendar year in which the original assessment was or should have been made, “provided that the property is under the ownership or control of the same person who owned or controlled it at the time it... was erroneously assessed.” The taxes for Lot 6A were erroneously assessed starting in 2009, and the ten-year limitation has not yet run.
CONCLUSION
¶39 We reverse the District Court’s December 15, 2015 and October 22, 2016 orders denying summary judgment to Gunnersfield, as well as the judgment quieting title in Zinvest. We remand for entry of judgment quieting title in Gunnersfield.
CHIEF JUSTICE McGRATH, JUSTICES WHEAT, SHEA, *348 SANDEFUR and RICE concur.

 Gunnersfield also challenges other steps in the process, but we find it unnecessary to entertain these arguments.

 The Dissent challenges the applicability of Musselshell County because not all mining interests are taxed as real property. Dissent, ¶ 46. As we explained in Rist v. Toole County, 117 Mont. 426, 434, 159 P.2d 340, 343 (1945), “the concept of royalty is very different from that of the fee-simple title to minerals in place in the ground.” This Court clarified in Past that royalty interests are taxed as personal property, but fee-simple title to minerals in the ground is taxed as real property. Rist, 117 Mont. at 442, 159 P.2d at 347. In Musselshell County, Roundup Coal Mining Company retained a fee simple interest in the minerals underlying the surface and thus the tax assessment at issue in that case was for real property taxes, not for personal property taxes as the Dissent states.

 Upon review of our case law, we find few cases that have actually relied on Cobban to uphold challenged assessments. To the extent that Cullen relies on Cobban and the predecessor to § 15-17-325, MCA, its continued validity on this point also is called into question by our decision today.

 The Dissent correctly points out that Vail involved special assessments rather than property taxes. Dissent, ¶ 46. However, in Vail, this Court analyzed the special assessments in the same manner as property taxes and even relied on the predecessor to § 15-8-201, MCA, the general tax assessment statute, in its analysis. Vail, 132 Mont. at 214, 315 P.2d at 998. We disagree that Vail is distinguishable in a meaningful way.